## SUE ANN CAPPELLINO *v.* TOWN OF CHESHIRE ET AL.
### (14608)

PETERS, C. J., CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued March 30—decision released July 27, 1993

*Michael J. Belzer,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellant (defendant Second Injury and Compensation Assurance Fund).

*Edward T. Dodd, Jr.,* with whom were *Jack Senich* and, on the brief, *Ross Lessack,* for the appellee (plaintiff).

*Diana Garfield* filed a brief for the Connecticut Business and Industry Association as amicus curiae.

BERDON, J. The sole issue in this workers' compensation case is whether the plaintiff widow, Sue Ann Cappellino, is entitled to the full balance of permanent partial disability benefits that were awarded to her injured husband pursuant to General Statutes (Rev. to 1975) § 31-308[1] after he reached maximum medical

---

[1] General Statutes (Rev. to 1975) § 31-308 provided in relevant part: "With respect to the following-described injuries the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be sixty-six and two-thirds per cent of the average weekly earnings of the injured employee, but in no case more than the maximum weekly benefit rate set forth in section 31-309, or less than twenty dollars weekly . . . (m) for the loss of the use of the back, that number of weeks which the proportion of incapacity represents to the maximum of five hundred and twenty weeks. If the injury consists of the loss of a substantial part of a member resulting in a permanent partial loss of the use of a member, or if the injury results in a permanent partial loss of function, the commissioner may, in his discretion, in lieu of other com-

improvement in 1978. After a portion of these benefits had been paid to the husband, he became totally disabled. Accordingly, the defendant[2] Second Injury and Compensation Assurance Fund (defendant) interrupted the payment of § 31-308 permanent partial disability benefits and paid the husband temporary total disability benefits pursuant to General Statutes (Rev. to 1975)

pensation, award to the injured person such a proportion of the sum herein provided for the total loss of, or the loss of the use of, such member or for incapacity or both as represents the proportion of total loss or loss of use found to exist, and any voluntary agreement submitted in which the basis of settlement is such proportionate payment may, if otherwise conformable to the provisions of this chapter, be approved by the commissioner in his discretion. . . ."

These provisions of § 31-308 currently provide: "(b) With respect to the following injuries, the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be eighty per cent of the average weekly earnings of the injured employee, calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal taxes and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310, but in no case more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309, or less than fifty dollars weekly. All of the following injuries include the loss of the member and the complete and permanent loss of use of the member referred to . . . Back . . . Number of weeks which the proportion of incapacity represents to a maximum of 520 weeks. . . .

"If the injury consists of the loss of a substantial part of a member resulting in a permanent partial loss of the use of a member, or if the injury results in a permanent partial loss of function, the commissioner may, in his discretion, in lieu of other compensation, award to the injured employee the proportion of the sum provided in this subsection for the total loss of, or the loss of the use of, the member or for incapacity or both that represents the proportion of total loss or loss of use found to exist, and any voluntary agreement submitted in which the basis of settlement is such proportionate payment may, if otherwise conformable to the provisions of this chapter, be approved by the commissioner in his discretion."

[2] Although the town of Cheshire is the named defendant in this appeal, it has not submitted a brief or otherwise actively participated.

§ 31-307[3] until his death in 1988 from a cause unrelated to his injury. The workers' compensation commissioner for the fifth district (commissioner) awarded the plaintiff the full balance of the permanent partial disability benefits, and the compensation review division affirmed.

On appeal,[4] the Appellate Court affirmed the decision of the compensation review division. *Cappellino* v. *Cheshire*, 27 Conn. App. 699, 608 A.2d 1185 (1992). We then granted certification to appeal[5] limited to the

---

[3] General Statutes (Rev. to 1975) § 31-307 provided in relevant part: "If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of his average weekly earnings at the time of the injury; but the compensation shall in no case be more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred, or less than twenty dollars weekly; and such compensation shall not continue longer than the period of total incapacity. . . ."

These provisions of § 31-307 currently provide: "(a) If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to eighty per cent of his average weekly earnings as of the date of the injury, calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal taxes and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310; but the compensation shall not be more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred. No employee entitled to compensation under this section shall receive less than twenty per cent of the maximum weekly compensation rate, as provided in section 31-309, provided the minimum payment shall not exceed eighty per cent of the employee's average weekly wage, as determined under section 31-310, and the compensation shall not continue longer than the period of total incapacity."

[4] General Statutes § 31-301b provides: "Any party aggrieved by the decision of the compensation review board upon any question or questions of law arising in the proceedings may appeal the decision of the compensation review board to the appellate court."

[5] Practice Book § 4126 provides: "Appeals may be taken to the supreme court in causes determined in the appellate court where the supreme court, upon petition of an aggrieved party or request of the appellate panel which heard the case, certifies the case for review."

following issue: "Did the Appellate Court properly conclude that the claimant's widow was entitled to the unpaid balance of the claimant's permanent partial disability benefits?" *Cappellino* v. *Cheshire,* 223 Conn. 914, 614 A.2d 820 (1992). We now affirm.

The undisputed facts are set forth in the Appellate Court opinion, *Cappellino* v. *Cheshire,* supra, 27 Conn. App. 699. By way of summary, on January 22, 1976, the plaintiff's husband injured his lower back while working for the town of Cheshire. On January 12, 1978, the commissioner determined that the husband's injury was compensable and ordered the town to provide him with compensation and pay his medical bills. The commissioner also ordered that liability for the injury be transferred to the defendant effective January 20, 1978.[6] The husband received § 31-307 temporary total disability benefits from January 22, 1976, until March 21, 1978.

On March 1, 1978, the husband reached the point of maximum medical improvement with a permanent 30 percent impairment of his back. On July 3, 1978, the commissioner approved a voluntary agreement entitling the husband to 156 weeks of § 31-308 permanent partial disability benefits. The husband received these benefits until October 12, 1978, when he again became totally disabled. The fund interrupted the pay-

---

[6] Mr. Cappellino had a preexisting injury to his back. The Second Injury and Compensation Assurance Fund is a state administered fund that is maintained by contributions from all workers' compensation insurers and self-insurers in Connecticut. See General Statutes (Rev. to 1975) § 31-354. If an employee with a preexisting disability is injured on the job and this injury results in a permanent disability caused by both the previous disability and the on-the-job injury that is materially and substantially greater than the disability that would have resulted from the on-the-job injury alone, the employer is liable only for the first 104 weeks of compensation and medical expenses. Thereafter, the second injury fund assumes financial responsibility for the employee, provided the employee meets certain conditions. See General Statutes (Rev. to 1975) § 31-349; see generally J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) pp. 67–70.

ment of permanent partial disability benefits and paid the husband temporary total disability benefits from October 12, 1978, until his death on October 4, 1988. The cause of death was unrelated to his injury.

The plaintiff, a surviving presumptive dependent[7] of her husband, claimed entitlement to the balance of the § 31-308 permanent partial disability benefits that were awarded to her husband in 1978. On September 19, 1989, the commissioner ordered payment of the balance of those benefits to the plaintiff. The compensation review division affirmed the award on February 4, 1991. The Appellate Court affirmed the decision of the compensation review division.

In this appeal, the defendant claims that the Appellate Court improperly concluded that the plaintiff was entitled to the unpaid balance of her husband's permanent partial disability benefits. The defendant argues that: (1) under the Workers' Compensation Act (act), § 31-308 permanent partial disability awards do not survive the death of the employee and become payable to a surviving dependent; and (2) even if such awards survive the death of the employee and become payable to a dependent, the payment of § 31-307 temporary total disability benefits to an employee who again becomes totally disabled discharges the defendant's duty to pay the permanent partial disability award. We disagree with the defendant and affirm the judgment of the Appellate Court.

---

[7] General Statutes (Rev. to 1975) § 31-306 provided in relevant part: "The following-described persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee and are referred to hereinafter as presumptive dependents: (1) A wife upon a husband with whom she lives at the time of his injury or from whom she receives support regularly . . . ." Public Acts 1991, No. 91-32, moved the definition of presumptive dependent from General Statutes § 31-306 to § 31-275 (19).

I

The defendant's first claim is that under the act, § 31-308 permanent partial disability awards do not survive the death of the employee and become payable to a surviving dependent. The commissioner, the compensation review division and the Appellate Court rejected the defendant's claim. We reject it as well.

"The purpose of the workmen's compensation law has always been to provide compensation for an injury arising out of and in the course of the employment regardless of fault, and the statutes are to be broadly construed to effectuate that purpose. . . . The underlying objective is to provide for the workman and those dependent on him." (Citation omitted.) *Klapproth* v. *Turner*, 156 Conn. 276, 279, 240 A.2d 886 (1968). In accord with this objective, this court has long held that the dependents of a deceased employee "have the right to the unmatured part of the award of compensation for a specified sum for a fixed period for loss or impairment of a member . . . ." *Bassett* v. *Stratford Lumber Co.*, 105 Conn. 297, 303–304, 135 A. 574 (1926); see also *Finkelstone* v. *Bridgeport Brass Co.*, 144 Conn. 470, 472, 134 A.2d 74 (1957).

The defendant argues that *Bassett* v. *Stratford Lumber Co.*, supra, misconstrued the workers' compensation statutes and should be overruled. We disagree. The holding in *Bassett* was based on two aspects of the statutory scheme that remain in place today: (1) workers' compensation laws are meant to benefit the dependents of injured employees as well as the employees themselves;[8] and (2) permanent partial disability awards may be commuted into lump sums and placed in trust for the benefit of the employee and his

---

[8] See General Statutes § 31-306.

or her dependents.[9] Id., 303–304. This court reasoned that "[i]f, upon commutation, the right of survivorship in the award . . . would pass to dependents, it would be a wholly unreasonable construction of the Act to hold that if commutation were not made, survivorship would not pass to the dependents." Id., 305. Permanent partial disability awards, therefore, should survive to an employee's dependents, whether or not they are commuted. Id., 305–306.

The rationale of the *Bassett* case remains valid. In addition, we note that "the legislature is presumed to be aware of the judicial construction placed upon its enactments." *Lumbermens Mutual Casualty Co.* v. *Huntley,* 223 Conn. 22, 30, 610 A.2d 1292 (1992). The legislature has amended the workers' compensation statutes several times since *Bassett* v. *Stratford Lumber Co.,* supra, but has never taken action to make § 31-308 permanent partial disability awards nonsurvivable. See *Lumbermens Mutual Casualty Co.* v. *Huntley,* supra. In fact, the legislature amended § 31-308 in 1989 to designate the class of people to whom such awards may survive.[10] Although this amendment does not apply to the award in this case; see *Iacomacci* v. *Trumbull,* 209 Conn. 219, 550 A.2d 640 (1988) (upholding the validity of the date of injury rule in workers' compensation cases); the legislative history of the amendment reveals that it has been the legislature's understanding that, consistent with *Bassett,* § 31-308 benefits survive the employee's death and pass to the dependents. See 32 H.R. Proc., Pt. 17, 1989 Sess., pp. 5876–77.

---

[9] See General Statutes § 31-302.

[10] Public Acts 1989, No. 89-346, provided: "Any award for compensation made pursuant to this section shall be paid to the employee, or in the event of such employee's death, to his surviving spouse or, if he has no such spouse, to his dependents in equal shares or, if he has no such spouse or dependents, to his children, in equal shares, regardless of their age."

We decline to overrule our long-standing holding that the balance of a permanent partial disability award passes to an employee's dependents if the employee dies of unrelated causes before the award is paid in full. Accordingly, we affirm the holding of the Appellate Court on this issue.

## II

The defendant next claims that even if § 31-308 permanent partial disability awards ordinarily do survive the death of the employee, the payment of § 31-307 temporary total disability benefits to the plaintiff's husband after he again became totally disabled discharged the defendant's duty to pay the permanent partial disability award. We disagree.

The defendant concedes that the benefits received by the plaintiff's husband from October 12, 1978, until his death were for temporary total disability, not permanent partial disability. The defendant also concedes that the voluntary agreement awarding permanent partial disability benefits to the plaintiff's husband was never modified or vacated. The defendant argues, however, that either: (1) the voluntary agreement remained in effect after October 12, 1978, but the defendant's payment of § 31-307 temporary total disability benefits at a rate exceeding that for § 31-308 permanent partial disability benefits discharged its obligations under the agreement; or (2) the defendant's payment of § 31-307 temporary total disability benefits starting on October 12, 1978, acted to vacate the voluntary agreement. We find both of these arguments unpersuasive.

Section § 31-308 specifically provides that compensation for permanent partial disability shall be "in addition to the usual compensation for total incapacity." While we have held that the act prohibits *concurrent*

payment of benefits for permanent partial disability and temporary total disability; *Paternostro* v. *Edward Coon Co.,* 217 Conn. 42, 49, 583 A.2d 1293 (1991); it is clear that these two types of benefits compensate an employee for different types of loss; see *Morgan* v. *East Haven,* 208 Conn. 576, 584, 546 A.2d 243 (1988); and that the payment of § 31-307 temporary total disability benefits does not discharge the obligation to pay § 31-308 permanent partial disability benefits at some point in the future. *Paternostro* v. *Edward Coon Co.,* supra, 46–47. We therefore reject the defendant's argument that the payment of temporary total disability benefits automatically discharged its obligation under the voluntary agreement to pay permanent partial disability benefits.

We also reject the defendant's alternative argument that its payment of § 31-307 temporary total disability benefits acted to vacate the voluntary agreement. In essence, the defendant is asking us to hold that the payment of temporary total disability benefits to the plaintiff's husband vacated the voluntary agreement by operation of law. We note, however, that the legislature has provided a mechanism for modifying voluntary agreements following a change in circumstances. See General Statutes § 31-315. The defendant failed to avail itself of this legislatively created mechanism for modifying the agreement. We refuse to create a judicial mechanism for achieving the same result.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.