JEAN MCCURDY ET AL. *v.* STATE OF CONNECTICUT
(14517)

PETERS, C. J., CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued March 30—decision released August 17, 1993

*Harold L. Rosnick,* with whom, on the brief, was *George P. D'Amico,* for the appellant (plaintiff estate of John Mollico).

*Robin L. Wilson,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (state).

BERDON, J. The principal issue in this workers' compensation case is whether the estate of a deceased worker is entitled to an award of permanent partial disability benefits if the worker, who was totally disabled, reached maximum medical improvement before his death, but died without an award having been made. The workers' compensation commissioner for the fourth district (commissioner) denied the plaintiffs' claim to an award, and the compensation review division (review division) affirmed.

On appeal,[1] the Appellate Court affirmed the decision of the review division.[2] *McCurdy* v. *State,* 26 Conn. App. 466, 601 A.2d 560 (1992). We then granted certification to appeal[3] limited to the following issue: "Did the Appellate Court properly determine that the claimant's estate was not entitled to permanent partial disability payments, under Connecticut General Statutes § 31-308 (b), from the date that he reached maximum medical improvement?" *McCurdy* v. *State,* 221 Conn. 920, 608 A.2d 686 (1992). We conclude that the estate

[1] General Statutes § 31-301b provides: "Any party aggrieved by the decision of the compensation review board upon any question or questions of law arising in the proceedings may appeal the decision of the compensation review board to the appellate court."

[2] Jean McCurdy, the widow of the decedent, and the estate of John Mollico, also known as John McCurdy, were plaintiffs before the review division. Jean McCurdy did not appeal the review division's affirmance of the commissioner's finding that she was not a dependent to the Appellate Court. Therefore, the estate is the only plaintiff before this court.

[3] Practice Book § 4126 provides: "Appeals may be taken to the supreme court in causes determined in the appellate court where the supreme court, upon petition of an aggrieved party or request of the appellate panel which heard the case, certifies the case for review."

was entitled to permanent partial disability benefits and therefore reverse the judgment of the Appellate Court.

The essential facts are undisputed. On November 21, 1983, John Mollico, also known as John McCurdy (decedent), injured his back while employed by the defendant, the state of Connecticut. Until December 24, 1987, when he died of causes unrelated to his injury, the decedent was paid temporary total disability benefits pursuant to General Statutes (Rev. to 1983) § 31-307.[4] On October 15, 1987, his physician rated his injury as a 70 percent permanent partial disability of the lower back. On October 20, 1987, the physician issued a supplemental report expressing his opinion that the dece-

[4] General Statutes (Rev. to 1983) § 31-307 provides in relevant part: "If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of his average weekly earnings at the time of the injury; but the compensation shall in no case be more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred . . . . No employee entitled to compensation under this section shall receive less than twenty per cent of the maximum weekly compensation rate, as provided in section 31-309, provided such minimum payment shall not exceed eighty per cent of the employee's average weekly wage, as determined under section 31-310; and such compensation shall not continue longer than the period of total incapacity. . . ."

Section 31-307 currently provides: "(a) If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to eighty per cent of his average weekly earnings as of the date of the injury, calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal taxes and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310; but the compensation shall not be more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred. No employee entitled to compensation under this section shall receive less than twenty per cent of the maximum weekly compensation rate, as provided in section 31-309, provided the minimum payment shall not exceed eighty per cent of the employee's average weekly wage, as determined under section 31-310, and the compensation shall not continue longer than the period of total incapacity."

dent's lower back had reached maximum medical improvement. On December 15, 1987, the decedent sought an award of permanent partial disability benefits pursuant to General Statutes (Rev. to 1983) § 31-308.[5] The workers' compensation commissioner

[5] *General Statutes (Rev. to 1983) § 31-308 provides in relevant part:* "(b) With respect to the following-described injuries the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be sixty-six and two-thirds per cent of the average weekly earnings of the injured employee, but in no case more than the maximum weekly benefit rate set forth in section 31-309, or less than twenty dollars weekly . . . (13) for the loss of the use of the back, that number of weeks which the proportion of incapacity represents to the maximum of five hundred and twenty weeks. If the injury consists of the loss of a substantial part of a member resulting in a permanent partial loss of the use of a member, or if the injury results in a permanent partial loss of function, the commissioner may, in his discretion, in lieu of other compensation, award to the injured person such a proportion of the sum herein provided for the total loss of, or the loss of the use of, such member or for incapacity or both as represents the proportion of total loss or loss of use found to exist, and any voluntary agreement submitted in which the basis of settlement is such proportionate payment may, if otherwise conformable to the provisions of this chapter, be approved by the commissioner in his discretion."

Section 31-308 currently provides in part: "(b) With respect to the following injuries, the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be eighty per cent of the average weekly earnings of the injured employee, calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal taxes and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310, but in no case more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309, or less than fifty dollars weekly. All of the following injuries include the loss of the member and the complete and permanent loss of use of the member referred to . . . Back . . . Number of weeks which the proportion of incapacity represents to a maximum of 520 weeks. . . .

"If the injury consists of the loss of a substantial part of a member resulting in a permanent partial loss of the use of a member, or if the injury results in a permanent partial loss of function, the commissioner may, in his discretion, in lieu of other compensation, award to the injured employee the proportion of the sum provided in this subsection for the total loss of, or

refused to award permanent partial disability benefits because the decedent remained totally disabled.

Following the decedent's death from cancer, Jean McCurdy sought an award for the 70 percent permanent partial disability of her late husband. The estate of the decedent notified the state that it, too, claimed entitlement to a 70 percent permanent partial disability award in the event that Jean McCurdy were found not to be a dependent widow.

The commissioner found that Jean McCurdy was neither the decedent's presumptive widow nor a dependent in fact, and therefore was not entitled to an award.[6] The commissioner further found that the decedent's estate was not entitled to a permanent partial disability award. On appeal, the review division upheld the decision of the commissioner and the Appellate Court affirmed the decision of the review division.

In its appeal to this court, the plaintiff estate claims that the Appellate Court improperly concluded that it was not entitled to an award of permanent partial disability benefits. The estate also claims that the Appellate Court incorrectly upheld the decision of the review division that the commissioner had not abused his discretion in denying the plaintiffs' motion to correct certain factual findings concerning the decedent. Although this claim concerning the commissioner's findings was not expressly certified, it falls within the scope of the

---

the loss of the use of, the member or for incapacity or both that represents the proportion of total loss or loss of use found to exist, and any voluntary agreement submitted in which the basis of settlement is such proportionate payment may, if otherwise conformable to the provisions of this chapter, be approved by the commissioner in his discretion."

[6] Permanent partial disability awards survive an employee's death and are payable to the employee's dependents. See *Cappellino* v. *Cheshire*, 226 Conn. 569, 576, 628 A.2d 595 (1993).

certified issue and has been briefed by both parties. Accordingly, we will consider this claim as well.[7]

## I

As a preliminary matter, we must review the Appellate Court's conclusion concerning the propriety of the commissioner's refusal to amend his findings and conclusions. After the commissioner had issued his decision denying the plaintiffs' claim, the plaintiffs submitted a motion to correct the commissioner's findings. The motion was granted in part and denied in part. The commissioner specifically refused to incorporate the following findings proposed by the plaintiffs:

"21. The decedent had a 70% permanent-partial disability of the low back.

"22. The decedent had reached maximum medical improvement with reference to his low back prior to the date of his death."

The plaintiffs challenged the commissioner's refusal to incorporate these two findings in their appeal to the review division. Although the review division's written decision did not specifically address this claim, it affirmed the commissioner's decision. On appeal, the Appellate Court held that the commissioner had properly refused to incorporate the two findings proposed by the plaintiffs. *McCurdy* v. *State*, supra, 26 Conn. App. 469. We disagree.

At the hearing on their claim, the plaintiffs submitted letters from the decedent's physician stating that the decedent had a permanent 70 percent disability of his back and had reached the point of maximum medi-

[7] The plaintiff estate's brief claims that if the commissioner's conclusion that the estate is not entitled to benefits were correct, then the workers' compensation statutes would violate the equal protection clauses of the state and federal constitutions. In view of our decision today, we need not reach this claim.

cal improvement. There is absolutely no evidence in the record to contradict these conclusions. Further, the state conceded at oral argument that no contradictory evidence had been offered.

" 'The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them.' *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 118, 411 A.2d 924 (1979). To the extent that the commissioner's finding discloses facts, his finding cannot be changed *unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. Wheat* v. *Red Star Express Lines,* 156 Conn. 245, 248, 240 A.2d 859 (1968)." (Emphasis added.) *Grady* v. *St. Mary's Hospital,* 179 Conn. 662, 669, 427 A.2d 842 (1980).

Because the evidence concerning the decedent's degree of disability and attainment of maximum medical improvement was undisputed, the commissioner should have included this information in his factual findings. The state argues, to the contrary, that the commissioner had discretion to omit these facts because he concluded that the decedent was totally disabled.[8] We disagree. A person may reach maximum medical

---

[8] The state relies on the statement in *Scalora* v. *Dattco, Inc.,* 39 Conn. Sup. 449, 452, 466 A.2d 334 (1983), that "one cannot be at once totally and partially incapacitated." We cited this statement in *Paternostro* v. *Edward Coon Co.,* 217 Conn. 42, 49, 583 A.2d 1293 (1991), in the course of holding that the Workers' Compensation Act does not permit the concurrent payment of permanent partial disability benefits and *temporary* total disability benefits. In the context of that case, however, the statement was dictum and it is not binding on us here. As a matter of common sense, it is clear that a worker can at once be *temporarily* totally disabled and *permanently* partially disabled; see *Osterlund* v. *State,* 129 Conn. 591, 600, 30 A.2d 393 (1943); although he cannot collect for both at the same time. *Cappellino* v. *Cheshire,* 226 Conn. 569, 577–78, 628 A.2d 595 (1993).

improvement, have a *permanent* partial impairment, and be *temporarily* totally disabled from working, all at the same time. *Osterlund* v. *State,* 129 Conn. 591, 600, 30 A.2d 393 (1943). The commissioner's finding of total disability therefore did not preclude the additional findings proposed by the plaintiffs. Because these proposed findings were not precluded and were undisputed, we hold that the commissioner should have incorporated them in his findings. The Appellate Court was mistaken in ruling to the contrary.

## II

We must next consider whether the Appellate Court should have recognized that the plaintiff estate was entitled to a permanent partial disability award, in view of the fact that the decedent had reached maximum medical improvement before his death. We conclude that the estate was entitled to an award.

## A

We have long held that an injured worker has a right to a permanent partial disability award once he or she reaches maximum medical improvement. In *Panico* v. *Sperry Engineering Co.,* 113 Conn. 707, 714, 156 A.2d 802 (1931), we explained that a permanent partial award "became due" when the worker reached maximum improvement. See also *Stapf* v. *Savin,* 125 Conn. 563, 565, 7 A.2d 226 (1939). In *Osterlund* v. *State,* supra, 597–600, we overruled *Panico* and *Stapf* to the extent that they precluded a commissioner from exercising his or her discretion to continue total disability payments to a worker who had reached maximum medical improvement but was still totally disabled from working. In *Osterlund,* we explained that "there might be, in case of a partial loss of function, a great disproportion between the amount of specific compensation provided and the actual effect of the injury, either from the standpoint of the employee's earning capac-

ity or the physical impairment he suffered." Id., 600. In a case such as this, however, in which the worker has reached maximum medical improvement and his permanent partial disability award has thereby vested, we hold that the commissioner does not have discretion to deny such an award if the worker requests that award, as the decedent did in this case. We therefore conclude that the decedent became entitled to a permanent partial disability award on December 15, 1987, when he requested such an award at the hearing before the commissioner.[9]

## B

Having concluded that the decedent became entitled to a permanent partial disability award prior to his death, we must consider whether the decedent's estate is entitled to payment of this award. We conclude that it is.

In *Forkas* v. *International Silver Co.*, 100 Conn. 417, 423, 123 A. 831 (1924), we held that the estate of a deceased worker was entitled to the balance of permanent partial disability benefits that were awarded to the decedent before his death but remained unpaid. We concluded that because a permanent partial disability award "has all the earmarks of a statutory award of liquidated damages for the loss" of a body part or its use, there was no reason why the award should not survive the death of the worker. Id., 421–22; see also *Cappellino* v. *Cheshire,* 226 Conn. 569, 576, 628 A.2d 595 (1993).

The state argues that *Bassett* v. *Stratford Lumber Co.,* 105 Conn. 297, 135 A. 574 (1926), overruled *Forkas*

---

[9] Because the decedent became entitled to an award on December 15, 1987, only temporary total disability payments that were made to him between that date and the date of his death can be deducted from a permanent partial disability award.

to the extent that *Forkas* allowed the estate of a deceased worker to recover the portion of a permanent partial disability award that remained unpaid at the worker's death. *Bassett,* however, involved a situation where the estate was challenging an award of the balance of unpaid permanent partial disability benefits to the decedent's dependent widow. Where, as here, there are no dependents, we hold that a permanent partial disability award that became due to the decedent before his death is payable to the estate.

The judgment of the Appellate Court is reversed, and the case is remanded to that court with direction to remand the case to the compensation review division to correct the commissioner's findings and to issue the appropriate award to the decedent's estate.

In this opinion PETERS, C. J., NORCOTT and KATZ, Js., concurred.

CALLAHAN, J., dissenting. I respectfully dissent and would affirm the judgment of the Appellate Court.