# CIRCUIT COURT OF STAFFORD COUNTY

In re Estate of
Gregory R. Stegeman,
Deceased

Gregory Scott Stegeman, a minor,
Elizabeth Lynn Stegeman, a minor,
Peter Richard Spada Stegeman, a minor,
all through their mother,
Lynn M. Heuer, legal guardian

 v.

Sandra K. Stegeman,
Co-Executrix,
and David P. Stegeman,
Co-Executor

April 14, 1997

Case No. (Chancery) 95000197

BY JUDGE JAMES W. HALEY, JR.

In 1981, Gregory Stegeman ("Gregory") was awarded permanent partial disability monthly payments by the Connecticut Workman's Compensation Commission ("Commission") as the result of an injury he received as an employee of Bridgeport Brass in that state. At the time of the injury and the initial workman's compensation payments, Gregory was married to Lynn (now "Lynn Heuer") and the couple had three minor children.

In 1982, Gregory and Lynn were divorced, with Lynn retaining custody of the children. By the terms of the divorce, Gregory was to pay child support for the three children and "the husband will maintain life insurance in an amount of at least $30,000.00 naming the minor children as primary beneficiaries. Upon his demise or death, the proceeds will go into a trust." Thereafter,

Gregory moved to Virginia and on June 26, 1993, married Sandra K. Stegeman ("Sandra"), a defendant herein. Lynn and the children remained in Connecticut.

A Connecticut attorney, Norman Chase had represented Gregory in his affairs, including the workman's compensation claim. Gregory decided he wished to convert his monthly disability payments into a final lump sum award, as authorized by Connecticut law. Gregory sought $65,000.00 and Chase made written demand for that sum to the Commission on September 22, 1993.

After a telephone conversation with Gregory affirming the same, as Chase testified "a full and final settlement ... an agreement was reached ... at the end of 1993 ..." for $65,000.00.

On December 21, 1993, Gregory died testate from causes unrelated to his workman's compensation injury. Chase further testified that the sum of $65,000.00 had been agreed upon "long before his [Gregory's] death ...." On February 15, 1994, Sandra and David P. Stegeman, Gregory's brother, also a defendant herein, qualified as co-executors of Gregory's estate in the Circuit Court of Stafford County. Under his Will, Gregory gave a life estate in real property to Sandra, remainder to his three children in fee, and devised his personal and residuary estate in trust to his three children. Gregory had not maintained the $30,000.00 life insurance policy for his children as required by the divorce decree and Gregory also owed $20,000.00 in past due child support at his death. His personal and residuary estate totaled $15,871.98 for the three children.

The Commission required that a "Stipulation for an Award by Agreement" be executed to memorialize the $65,000.00 lump sum settlement. As Chase testified, he was advised by the Commission "that we needed any executors to sign off on ..." the stipulation. The Stipulation, dated February 10, 1994, was accordingly signed by Sandra and David D. Stegeman, as co-executors of Gregory's estate. There is no mention in this document of "dependents" or "spouses." Because of liquidity problems with the Connecticut workman's compensation fund, a moratorium on payments existed, and it was not until September 16, 1994, that the $65,000.00 check was issued and mailed to Chase. The check was payable to "Sandra and David Stegeman, Co-Executors of the Estate of Gregory Stegeman."

Apparently anticipating the arrival of the $65,000.00 check, on September 9, 1994, Sandra and David Stegeman each faxed a letter to Chase authorizing him to "act as trustee for Sandra Stegeman ..." and to "endorse my name, on my behalf as trustee ...." The letters directed Chase to endorse and deposit the $65,000.00 check, deduct his attorney's fee, and pay the balance "to Sandra

K. Stegeman." The letters did not refer to Sandra or David Stegeman as "Co-Executors" nor were they signed in that capacity. Chase endorsed the check, deposited it in his trust account, and on September 19, 1994, disbursed the balance of $40,126.00 by check payable to Sandra K. Stegeman in her own name. These funds were never deposited in any account for the estate of Gregory Stegeman. Thus, these funds went to Sandra, Gregory's wife of less than six months, rather than to his children.

Chase testified:

Q. Now, when you received the funds, sixty-five thousand dollars, on whose behalf were you receiving those funds?
A. Well, I was receiving the funds on behalf of the co-executors of the estate. Basically the estate.
Q. So in your mind at that point you were receiving the funds on behalf of the Estate of Gregory Stegeman?
A. Right.

Chase did not "recall" why his check was made payable to Sandra personally, rather than to the co-executors to the estate. (T. 17.)

The parties have stipulated:

The money has been used by Sandra Stegeman. No funds remained as of the date of the injunction issued by the court enjoining the co-executors from further dissipating the funds .... No annual accounting has been filed with the Commissioner of Accounts.

Defendants concede that "the terms of the settlement were fixed and agreed upon before Stegeman's death ...." (Def's Brief, p. 4.) Defendants maintain, however, that the proceeds of the agreement were not an asset of Gregory's estate, and even if they were, in either event, they should be disbursed to Sandra, allegedly his dependent under Connecticut's Workman's Compensation law.

The court finds the $65,000.00 proceeds were an asset of Gregory's estate. The Workman's Compensation Commission considered them as such, for they required that the executors of Stegeman's Estate execute the Stipulation, and they disbursed the proceeds check with the co-executors as payees. And the Defendants' attorney, Chase, acknowledged he received the funds "on behalf of the co-executors of the estate."

Defendants rely upon *Cappellino v. Town of Cheshire*, 226 Conn. 569 (1993), for the proposition that Sandra was entitled to the $65,000.00 in any

event. On July 3, 1978, Cappellino had entered into an agreement to receive 156 weeks of permanent partial disability benefits payable weekly. On October 12, 1978, however, Cappellino suffered another compensable injury and received full disability payments. These full payments caused an interruption of the partial payments, and these full payments continued until Cappellino's death on October 4, 1988, from causes unrelated to his injuries.

The Town claimed that the right to further permanent partial disability payments did not survive Cappellino's death. The Connecticut Supreme Court disagreed, stating that:

> this court has long held that the dependents of a deceased employee "have the right to the *unmatured* part of the award of compensation for a specified sum for a fixed period for loss or impairment of a member ... *Bassett v. Stratford Lumber Co.*, 105 Conn. 297, 303-304, 135 A. 574 (1926) ....

226 Conn. at 569 (emphasis supplied).

Accordingly, the court held that the balance of the unmatured portion of Cappellino's payments were payable to Cappellino's statutory dependents.

But in the instant case, an agreement had been reached before Gregory's death for Gregory to accept a *matured*, lump-sum, full and final settlement of his claim. As the defendants concede, the Connecticut "terms were fixed and agreed upon before Stegeman's death." Connecticut statute § 31-302 permits commutation of payments "into a single lump sum, which may be paid to the one then entitled to the compensation, and the commutation shall be binding upon all persons entitled to compensation for the injury in question." Only Gregory Stegeman was entitled to the $65,000.00 when the agreement was struck between Gregory and the Commission.

The Commission required the co-executors to execute the Stipulation and paid the proceeds to the co-executors. Indeed, if by Connecticut law, the $65,000.00 were payable only to dependents, it must be presumed the Connecticut Commission would have required a determination as to who were dependents, required them to execute the Stipulation, and paid the proceeds to the dependents. The execution of the Stipulation and disbursement of the $65,000.00 were, in essence, ministerial, the agreement having been earlier reached. Finally, had Gregory lived long enough to endorse the check and obtain the proceeds, there would be no question that those proceeds would have been assets of his estate, a point defendants also concede.

> If Gregory Stegeman had received the settlement funds prior to his
> death ... the settlement funds would have come into the estate as cash
> ... available for distribution to the residuary beneficiaries.

(Defendants' Brief, pp. 7-8.)

In conclusion, the court finds that the proceeds of $65,000.00[1] were assets of Gregory's Virginia estate, subject to the law of Virginia, and should have passed to his children through the residuary clause of his Will. Obviously, the co-executors breached their fiduciary duties in directing the appropriation of the proceeds to Sandra personally.

Upon Gregory's death, on February 14 and 15, 1994, Lynn Heuer was appointed fiduciary guardian of her three minor children by orders of the Court of Probate, District of Trumball, State of Connecticut.

Before this appointment, Chase had contacted Lynn Heuer, and, as he testified, she advised she would waive any interest of her children in the $65,000.00 because "Greg[ory] had taken care of her kids I believe through life insurance or other means had provided for them ...."

At Chase's apparent direction, she executed a document under oath reciting her appointment as guardian of the children, acknowledging the existence of the $65,000.00, and stating that: "The children have no desire for the funds and waive any and all rights to the funds."

As noted above, the court has held the $65,000.00 to be an asset of a Virginia estate subject to the law of the Commonwealth. Defendants maintain that this document executed by Lynn Heuer constituted a disclaimer of interest in Gregory's estate, as authorized by Virginia Code § 64.1-188.

To be effective as a disclaimer under Code § 64.1-188, the document must (1) describe the disclaimed property; (2) declare the disclaimer; (3) be signed in the same manner as the execution of a deed. The court need not determine whether the document signed by Lynn Heuer meets these requirements. This is true because the disclaimer, as here relevant, had to be "filed within nine months after the death of the decedent ... with the court in which the estate in the Commonwealth of the decedent ... is administered ...." Code § 64.1-189. Gregory died on December 21, 1993. The disclaimer has never been filed in the estate administration file. The only filing of the disclaimer was as an attachment to the instant Bill of Complaint, filed on April 25, 1995. Accordingly, because of lack of filing, timely or otherwise, the disclaimer is ineffective. In addition to the foregoing, Code § 64.1-194 states that a disclaimer "shall be binding upon the disclaimant ... and all parties claiming

---

[1] See *infra* concerning net proceeds of the $65,000.00.

by, through, or under him." Lynn Heuer had no interest in Gregory's estate, and accordingly Gregory's children are not claiming "by, through, or under" Lynn Heuer.

Two remaining matters need to be addressed by the court.

(1) Complainants argue that Chase's attorney's fees should be disallowed as they were not claimed as a debt of Gregory's estate. As a bookkeeping proposition, Complainant's position may be correct. However, the evidence is uncontradicted that Gregory agreed to the payment of those fees in his lifetime, that the amount of those fees is authorized by law, and that the Defendants, as Gregory's co-executors, authorized their payment. In any event, therefore, the net proceeds of Gregory's lump sum payment would have been the same, that is $40,126.00, the sum disbursed by Chase to Sandra Stegeman. Accordingly, Complainants' claim for an amount equal to those fees is not allowed.

(2) As noted above, Gregory died owing approximately $20,000.00 in back child support and not having maintained the $30,000.00 life insurance policy for his children's benefit, as he was required to do under the terms of his divorce. There are no additional funds from any source in Gregory's Estate to pay a judgment for back child support or to fulfill his insurance obligation. Accordingly, counsel have agreed any finding by the court as to these two claims would be moot if the court found, as it has, that the net lump-sum settlement of $40,126.00 was the property of Gregory's three children. Thus the court does not address these two claims or the defenses asserted to them.

Judgment is entered jointly and severally against Sandra Stegeman and David P. Stegeman in the amount of $40,126.00, with interest at the judgment rate from the date the first accounting of the Estate of Gregory Stegeman was due, that is sixteen months from the date of their qualifications as his co-executors. The defendants qualified on February 15, 1994, and thus that date is June 16, 1995.