## FRANCIS J. CHURCHVILLE, JR. *v.* BRUCE R. DALY MECHANICAL CONTRACTOR ET AL.
### (SC 18546)

Rogers, C. J., and Katz, Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

Argued September 22—officially released December 14, 2010

*Maribeth M. McGloin,* for the appellants (defendants).

*Stephen F. McEleney,* for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The dispositive issue in this workers' compensation appeal is whether a surviving spouse of a deceased employee who had been receiving temporary total incapacity benefits is entitled to an award of permanent partial disability benefits only if the employee had affirmatively requested permanent partial disability benefits prior to his death. The defendants, Bruce R. Daly Mechanical Contractor (Daly) and Risk Enterprise Management, appeal[1] from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) concluding that the right of the plaintiff, Francis J. Churchville, Jr., to collect permanent partial disability benefits had vested prior to his death. The defendants claim that the board's conclusion that the plaintiff was not required to make an affirmative request for permanent partial disability benefits in order for his right to those benefits to vest was improper. They also contend that the commissioner improperly concluded that, even if an affirmative request were a prerequisite to the vesting of a plaintiff's entitlement to benefits, the plaintiff's settlement demand constituted an affirmative

---

[1] The defendants appealed from the decision of the board to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

request.[2] Because we conclude that the plaintiff was not required to make an affirmative request in order for his entitlement to the benefits to vest, we affirm the decision of the board.[3]

The record reflects the following facts as found by the commissioner, and procedural history. In 1997, while employed by Daly, the plaintiff sustained a compensable injury to his right shoulder and subsequently sustained a compensable injury to his lumbar spine.[4] While the plaintiff collected temporary total incapacity benefits in connection with his injuries, he underwent a number of medical evaluations to determine whether he had any work capacity and the extent of his disability. On January 7, 2004, Charles B. Kime, the plaintiff's treating physician, evaluated his back injury and indicated that the plaintiff was totally incapacitated, and that he had reached maximum medical improvement with a 32 percent permanent partial impairment of the lumbar spine. One year later, upon performing a functional capacity evaluation of the plaintiff, Kime con-

[2] Although the defendants claim that the board also concluded that the settlement demand constituted an affirmative request, we do not read the board's decision as reaching that issue. Instead, a footnote to the board's decision simply noted that the commissioner had found that the demand constituted an affirmative request.

[3] Our conclusion that the plaintiff was not required to make an affirmative request in order for his right to the benefits to vest renders it unnecessary to address the issue of whether his settlement demand constituted an affirmative request.

We also do not address a claim raised by the defendants that the board improperly affirmed the commissioner's determination that the defendants were to be credited for cost of living increases paid to the plaintiff in connection with his temporary total incapacity benefits as of the date that the defendants filed the form 36, rather than from the earlier date upon which the plaintiff reached maximum medical improvement. As the defendants concede, the claim was not preserved, and we do not address it.

[4] The commissioner found that an injury that the plaintiff had sustained to his left shoulder was not compensable and dismissed the portion of the plaintiff's claim seeking compensation for that injury. That finding and dismissal are not at issue in this appeal.

cluded that although the plaintiff appeared to be capable of "some sedentary activity," he did not "appear to be capable of any significant vocational activity." On June 12, 2006, Michael Aron, a physician who evaluated the plaintiff's shoulder injury, found that the plaintiff's right shoulder had reached maximum medical improvement, with a 10 percent permanent partial disability of the shoulder. On April 20, 2007, the plaintiff's back injury was evaluated by a second physician, Aris D. Yannopoulos, who reported that he had reached maximum medical improvement, with a 20 percent permanent partial disability to the lumbar spine. With respect to the plaintiff's work capacity, Yannopoulos concluded that he "could perform work which requires intermittent sitting and standing." The defendants subsequently filed a form 36 with the commissioner, seeking to discontinue the plaintiff's temporary total incapacity benefits and commence payment of permanent partial disability benefits on the basis of Yannopoulos' conclusion that the plaintiff had reached maximum medical improvement.[5] The plaintiff objected to the form 36, and, following a hearing, the commissioner ordered an independent examination of the plaintiff in order to determine the extent of any permanent partial disability and evaluate the plaintiff's work capacity. The physician who performed the examination, Jarob Mushaweh, con-

[5] The defendants filed the form 36 notice of intention to discontinue or reduce payments in compliance with General Statutes § 31-296 (b), which provides in relevant part, that an employer, before reducing or discontinuing payment of benefits under a voluntary agreement with the employee, "shall notify the commissioner and the employee, by certified mail, of the proposed discontinuance or reduction of such payments. Such notice shall specify the reason for the proposed discontinuance or reduction and the date such proposed discontinuance or reduction will commence. No discontinuance or reduction shall become effective unless specifically approved in writing by the commissioner. . . ." The defendants effectively sought both to discontinue one type of benefits or to reduce benefits, because cost of living increases are payable in connection with total incapacity benefits, but not disability benefits.

curred regarding the diagnosis of failed back syndrome but did not offer an opinion regarding the percentage of permanent partial disability of either the plaintiff's back or shoulder.[6] He opined that the plaintiff would not benefit from further surgical procedures and also stated that the plaintiff was capable of performing sedentary work. The plaintiff subsequently presented the defendants with a settlement demand, under which one option was the payment of permanent partial disability benefits in connection with the injuries to his shoulders and his back, as well as benefits under General Statutes § 31-308a. On January 23, 2008, the commissioner denied the form 36 and the plaintiff continued to receive temporary total incapacity benefits until he died on February 28, 2008, of causes unrelated to his work injuries.[7] On March 4, 2008, the plaintiff's counsel, Stephen F. McEleney, withdrew the objection to the form 36. A hearing subsequently was held at which both McEleney and the plaintiff's wife, Margery Churchville, participated.[8] On July 15, 2008, the commissioner issued a finding and award, approving the form 36 and finding that the plaintiff had suffered a 10 percent permanent

[6] Mushaweh noted that the plaintiff had limited range of motion for both shoulders, but declined to confirm a diagnosis of the right shoulder injury or to offer an opinion regarding the percentage of disability of the right shoulder.

[7] It is unclear from the record whether the commissioner denied the form 36 on the basis of a finding that the plaintiff had not reached maximum medical improvement, or in an exercise of the commissioner's discretion on the basis of a finding that, although the plaintiff had reached maximum medical improvement, he remained totally incapacitated. The defendants did not file a motion for articulation.

[8] Following the plaintiff's death, neither Margery Churchville nor the plaintiff's estate were substituted as the plaintiff in the action. By operation of law, through General Statutes § 31-308 (d); see footnote 11 of this opinion; Margery Churchville, as the plaintiff's surviving spouse, became entitled to any award that was due to the plaintiff. Accordingly, we do not view the failure to substitute her as the plaintiff as a jurisdictional defect. For purposes of accuracy, however, we refer to Margery Churchville by name and not as the plaintiff.

partial disability to his right shoulder and a 32 percent permanent partial disability to his lumbar spine. The commissioner ordered that all payments that the defendants had made to the plaintiff subsequent to May 4, 2007, the date of the filing of the form 36, would be credited against the permanent partial disability benefits due to the plaintiff and ordered the defendants to pay the remainder to the plaintiff's estate.

McEleney and the defendants each filed motions to correct, which the commissioner denied. The defendants appealed from the decision of the commissioner to the board, claiming that the commissioner improperly had concluded that: (1) the plaintiff did not have to make an affirmative request in order for his right to permanent partial disability benefits to vest before his death; and (2) even if an affirmative request had been required, the plaintiff's settlement demand satisfied that requirement.[9] Margery Churchville appealed only that portion of the commissioner's decision that had awarded the benefits to the plaintiff's estate rather than to her. The board affirmed the commissioner's decision, concluding that the right to permanent partial disability benefits vests once a claimant reaches maximum medical improvement, and, therefore, no affirmative request was required. With respect to Margery Churchville's claim that she, rather than the plaintiff's estate, should be awarded the benefits, the board remanded the matter to the commissioner to make the requisite findings under General Statutes § 31-308 (d). Subsequently, the commissioner awarded the benefits to Margery Churchville, based on his finding that she met the definition of " 'presumptive dependent' " as set forth in Gen-

[9] The defendants also claimed that the commissioner improperly had found that the plaintiff suffered a 32 percent permanent partial impairment of the lumbar spine, despite Yannopoulos' opinion that the plaintiff had suffered only a 20 percent impairment of the lumbar spine. The board rejected this claim and the defendants have not raised this aspect of the board's decision on appeal.

eral Statutes § 31-275 (19)[10] and was the plaintiff's "surviving spouse" pursuant to § 31-308 (d).[11] This appeal followed.

Because the issue of whether a deceased employee's surviving spouse or presumptive dependent is entitled to permanent partial disability benefits only when the employee had affirmatively requested those benefits prior to death is dispositive, we turn to that claim. The defendants argue that this court's decision in *McCurdy* v. *State*, 227 Conn. 261, 268–69, 630 A.2d 64 (1993), as well as subsequent decisions of the board, support the proposition that a deceased employee's surviving spouse or presumptive dependent is entitled to permanent partial disability benefits only if the employee had made an affirmative request for those benefits prior to death. We disagree. We conclude, consistent with our applicable precedents, that a plaintiff's right to permanent partial disability benefits, as well as the attendant entitlement enjoyed by the plaintiff's surviving spouse or presumptive dependent, vests when the plaintiff reaches maximum medical improvement, and does not depend on an affirmative request for such benefits.

We have long recognized that the beneficiaries of the Workers' Compensation Act, General Statutes § 31-275 et seq., include both the injured employee and his or her dependents. See, e.g., *Bassett* v. *Stratford Lumber*

[10] General Statutes § 31-275 (19) provides in relevant part: " 'Presumptive dependents' means the following persons who are conclusively presumed to be wholly dependent for support upon a deceased employee . . . (A) A wife upon a husband with whom she lives at the time of his injury or from whom she receives support regularly . . . ."

[11] General Statutes § 31-308 (d) provides: "Any award or agreement for compensation made pursuant to this section shall be paid to the employee, or in the event of the employee's death, whether or not a formal award has been made prior to the death, to his surviving spouse or, if he has no surviving spouse, to his dependents in equal shares or, if he has no surviving spouse or dependents, to his children, in equal shares, regardless of their age."

*Co.,* 105 Conn. 297, 299, 135 A. 574 (1926). Section 31-308 (d) provides that a surviving spouse or presumptive dependent of a decedent employee is entitled to an award of compensation to which the employee would have been entitled regardless of whether a formal award was made prior to the employee's death. See footnote 11 of this opinion. The entitlement of a surviving spouse or presumptive dependent, accordingly, depends on the entitlement of the employee. The question of whether Margery Churchville is entitled to the permanent partial disability benefits, therefore, turns on whether the plaintiff was entitled to recover those benefits.

Because the facts of the present case involve both the recovery of temporary total incapacity benefits and a claim for permanent partial disability benefits, we are mindful of the distinction between incapacity benefits and disability benefits. "Benefits available under the [Workers' Compensation Act] serve the dual function of compensating for the disability arising from the injury and for the loss of earning power resulting from that injury. *Panico* v. *Sperry Engineering Co.,* 113 Conn. 707, 710, 156 A. 802 (1931). Compensation for the disability takes the form of payment of medical expenses; General Statutes § 31-294d; and specific indemnity awards, which compensate the injured employee for the lifetime handicap that results from the permanent loss of, or loss of use of, a scheduled body part. *Schiano* v. *Bliss Exterminating Co.,* [260 Conn. 21, 25 n.4, 792 A.2d 835 (2002)]; see General Statutes § 31-308 (b) (loss of or loss of use of member) and (d) (scarring); see also 4 A. Larson & L. Larson, Workers' Compensation Law (2002) § 80.04, p. 80-12 ([p]ermanent partial schedule awards are based on medical condition after maximum improvement has been reached and ignore wage loss entirely). . . .

"Compensation for loss of earning power takes the form of partial or total incapacity benefits. *Mulligan* v.

*F. S. Electric*, 231 Conn. 529, 541, 651 A.2d 254 (1994), overruled in part on other grounds by *Williams* v. *Best Cleaners*, 237 Conn. 490, 492–93, 677 A.2d 1356 (1996); *Rousu* v. *Collins Co.*, 114 Conn. 24, 30–32, 157 A. 264 (1931). Incapacity, as that term is used under the Workers' Compensation Act, means incapacity to work, as distinguished from the loss or loss of use of a member of the body. *Panico* v. *Sperry Engineering Co.*, supra, 113 Conn. 710." (Internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 349–50, 819 A.2d 803 (2003).

We have noted that "§ 31-308 specifically provides that compensation for permanent partial disability shall be 'in addition to the usual compensation for total incapacity.' While we have held that the [Workers' Compensation Act] prohibits concurrent payment of benefits for permanent partial disability and temporary total [incapacity]; *Paternostro* v. *Edward Coon Co.*, 217 Conn. 42, 49, 583 A.2d 1293 (1991); it is clear that these two types of benefits compensate an employee for different types of loss; see *Morgan* v. *East Haven*, 208 Conn. 576, 584, 546 A.2d 243 (1988); and that the payment of [General Statutes] § 31-307 temporary total [incapacity] benefits does not discharge the obligation to pay § 31-308 permanent partial disability benefits at some point in the future." *Cappellino* v. *Cheshire*, 226 Conn. 569, 577, 628 A.2d 595 (1993).

Because the two types of benefits compensate an employee for distinct losses, entitlement to the two benefits is triggered by different factors. Entitlement to incapacity benefits depends on the employee's capacity to work. General Statutes §§ 31-307 (a) and 31-308 (a). As for entitlement to disability benefits, because the extent of that award necessarily depends on both the establishment of a permanent disability and the extent of the disability, "[w]e have long held that an injured worker has a right to a permanent partial disabil-

ity award once he or she reaches maximum medical improvement." *McCurdy* v. *State*, supra, 227 Conn. 268. *McCurdy* involved an employee who had been receiving temporary total incapacity benefits pursuant to § 31-307. Id., 263. When he was determined to have reached maximum medical improvement, the employee requested an award of permanent partial disability benefits. Id., 264. The commissioner denied the request because the employee remained totally incapacitated, and could not collect both disability and incapacity benefits. Id., 264–65. Following the employee's death due to causes unrelated to his compensable injury, his estate claimed entitlement to permanent partial disability benefits.[12] Id., 265. The commissioner concluded that the employee's estate was not entitled to the benefits, and both the board and the Appellate Court affirmed the decision. Id.

We disagreed, explaining: "In *Panico* v. *Sperry Engineering Co.*, [supra, 113 Conn. 714], we explained that a permanent partial award became due when the worker reached maximum improvement. See also *Stapf* v. *Savin*, 125 Conn. 563, 565, 7 A.2d 226 (1939). In *Osterlund* v. *State*, [129 Conn. 591, 597–600, 30 A.2d 393 (1943)], we overruled *Panico* and *Stapf* to the extent that they precluded a commissioner from exercising his or her discretion to continue total disability payments to a worker who had reached maximum medical improvement but was still totally disabled from working. In *Osterlund*, we explained that there might be, in case of a partial loss of function, a great disproportion between the amount of specific compensation provided and the actual effect of the injury, either from the standpoint of the employee's earning capacity or the physical impairment he suffered." (Internal quotation marks

---

[12] The employee's wife also had claimed entitlement to the benefits, but the commissioner found that she was not his dependent widow. *McCurdy* v. *State*, supra, 227 Conn. 265.

omitted.) *McCurdy* v. *State*, supra, 227 Conn. 268–69. We further explained, however, that in a case such as *McCurdy*, "in which the worker has reached maximum medical improvement and his permanent partial disability award has thereby vested . . . the commissioner does not have discretion to deny such an award if the worker requests that award, as the decedent did in [*McCurdy*]. We therefore conclude[d] that the decedent became entitled to a permanent partial disability award on December 15, 1987, when he requested such an award at the hearing before the commissioner." Id., 269. That is, in *McCurdy*, our focus on an employee's request for disability benefits was limited to considering the effect that such a request has on the commissioner's discretion. Once an employee whose right to a disability benefit award has vested because that employee has reached maximum medical improvement requests payment of the disability benefits, the commissioner no longer has discretion to deny the award of the disability benefits, regardless of whether the employee remains totally incapacitated. Id., 268–69. We did not, however, suggest that an employee's entitlement to disability benefits vested only upon the employee's request for such benefits.[13]

In the present case, in the July 15, 2008 finding and award, the commissioner found that as of May 4, 2007,

[13] The defendants' reliance on decisions of the board stating that a claimant is required to make an affirmative request in order for entitlement to disability benefits to vest is unavailing. See, e.g., *Estate of Sullo* v. *State*, No. 4796, CRB 1-04-3 (September 8, 2006). In the present case, the board expressly stated that this line of cases was either unpersuasive or inapplicable. We note that there is no claim that this interpretation is time-tested. See *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 262, 788 A.2d 60 (2002) ("an agency's interpretation of a statute is accorded deference when the agency's interpretation has been formally articulated and applied for an extended period of time, and that interpretation is reasonable"). Even if there were such a claim, we do not afford deference to the board's interpretation when the board construes a statute inconsistently. See *Ricigliano* v. *Ideal Forging Corp.*, 280 Conn. 723, 729, 912 A.2d 462 (2006).

the plaintiff had reached maximum medical improvement of his lumbar spine and right shoulder. In accordance with the commissioner's finding, therefore, the plaintiff's right—as well as the right of Margery Churchville—to the disability benefits had vested. The board properly affirmed the commissioner's award of the benefits to Margery Churchville as the plaintiff's surviving spouse.

The decision of the workers' compensation review board is affirmed.

In this opinion the other justices concurred.