[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[MEMORANDUM OF DECISION]
The plaintiff husband commenced this action for a dissolution of the parties' marriage by complaint returnable November 17, 1992. He alleges that the marriage has broken down irretrievably and seeks alimony, custody of the parties' minor children, support and such other relief as is fair and equitable. The defendant wife admitted in her answer that the marriage had broken down irretrievably. In her cross complaint, she alleges that the marriage had broken down irretrievably and also seeks a dissolution of the marriage, custody of the minor children, support, alimony, an equitable assignment of all or a portion of the plaintiff's estate and other relief. Counsel was appointed to represent the minor children, and the issues of custody and visitation of the minor children were referred to Family Services for study, investigation and recommendation. The parents were represented by counsel throughout the proceedings, including trial.
At the hearing, the parties testified and filed financial affidavits; the mother and children's counsel submitted proposed written claims for relief, and a number of documentary materials were introduced into evidence. These included tax returns, cancelled checks and pension and annuity records. In addition, each party called witnesses, and the CT Page 4963 hearing consumed two trial days. The taking of evidence was concluded on April 6, 1994, and the parties made oral argument. The defendant was granted until April 20, 1994, to file a brief on the issue of her claim for an assignment of a portion of the plaintiff's worker's compensation claim and to also provide information relating to the status of a motion for a deficiency judgment, if any, on the parties' foreclosed home. The plaintiff was granted until May 4, 1994, to file a reply brief; if not filed, then the trial would be deemed completed as of May 4, 1994. From the evidence, the court finds as follows:
The plaintiff husband married the defendant wife, whose birth name was Kathleen Kiss, December 15, 1985, at Willimantic, Connecticut. He has resided continuously in this state for at least one year before the date of the complaint, October 21, 1992. All statutory stays have expired, and the court has jurisdiction. The parties have two minor children, Nicole Denning, born June 6, 1986, and Tyler Denning, born November 10, 1990, who are issue of the marriage. No other minor children were born to the wife since the date of the marriage, and neither party is a recipient of public assistance.
The plaintiff husband is 35 years of age and is a high school graduate.
In December of 1993, he fell from a height of 25 feet on his job and sustained several fractures. At the time of trial, he required crutches to ambulate. He had sustained previous injuries from his iron worker job and had a permanent partial disability before his recent fall. It is unknown at this time what the nature and extent of his additional permanent disabilities, if any, will be.
He also has had a long period of substance abuse, including alcohol and drugs, which apparently ended after an admission of approximately one month's duration in 1988 to Spofford Hall, New Hampshire, a rehabilitation and treatment center. His health is otherwise good; he describes himself as a recovering addict.
He has worked as an iron worker on construction for the past 13 years and is a union member. His work entails risks from working at heights and is both arduous and strenuous. His present hourly rate, as of his last employment, CT Page 4964 is $22 per hour, with an increment when he works as a foreman. During the past seven years, the parties' joint tax returns report his gross income[1] as follows: 1987, $33,860; 1988, $46,354; 1989, $55,916; 1990, $58,847; 1991, $50,715; and 1992, $82,120.[2] Although neither a tax return nor a W-2 form reporting his 1993 earnings were introduced into evidence, the court gleans from defendant's Exhibit 12 that the plaintiff worked approximately 780 hours during the year, which when multiplied by his hourly rate of $22, results in a gross annual income of about $17,160 for 1993.
He currently receives $478 per week net as total temporary disability workers' compensation benefits.
The wife is thirty years old and is in good health. She also has been a substance abuser, mostly of alcohol, and is a recovering alcoholic. She has undergone detoxification and has recently `slipped' at least twice, briefly. She suffered a number of miscarriages during the marriage.
She has a high school diploma (G.E.D.) and essentially minimal vocational or job skills. She worked for very brief periods as an aerobics instructor and barmaid-waitress. In aerobics, she earned $5 per hour; as a waitress, she earned $200 per week including tips, part time. She hopes to obtain the necessary training and education to become a licensed practical nurse by 1996, although she has not made specific plans to enter the one-year course of study required.
This marriage of about eight and one-half years was troubled almost from the start. The parties were destructive of each other, themselves and, as a consequence, their marriage. They abused alcohol and drugs regularly. As a result of the plaintiff's heavy drug use and his hospitalization, the wife commenced a dissolution in 1988, which was ultimately not pursued.
The parties separated at that time, and then were united until early 1992, when they finally separated, due to the husband's assault of the wife. She sustained injuries as a result and obtained a protective order excluding him from the home; she obtained another protective order in September, 1992.
When the husband obtained a reduction of his court-ordered pendente lite child support and alimony payments in CT Page 4965 early 1993, the wife was no longer able to make the mortgage payments and moved out of the family dwelling.
The husband then moved in and resided there until about December, 1993, and made no mortgage payments whatsoever; neither party made diligent efforts to save the family home from foreclosure, although the wife attempted to sell it.
The wife now lives with her boyfriend in his home, as man and wife. The household includes the two minor children. The husband spent much time throughout the trial castigating the wife for her present intimate relationship and its effects upon the parties' children; at the same time, soon after the parties' early 1992 separation, he began a similar live-in relationship with his present girlfriend, to which the children were also exposed. His relationship, as does the wife's, still continues. The court believes his stance both sanctimonious and hypocritical.
From this evidence, the court finds that the parties' marriage has broken down irretrievably, and further finds that although both parties acted immaturely and inappropriately and must shoulder blame for the destruction of their marriage, a greater share of the responsibility lies at the husband's door.
During the pretrial proceedings, a joint custody order was entered, with principal physical custody of the children to the wife. However, apparently as a result of the events related below, the parties agreed at the outset of the trial that the wife should be awarded sole custody of the minor children; thus, custody was no longer an issue. During a visitation with the husband in 1993 in New Hampshire with his girlfriend and the girlfriend's daughter, the children were exposed to a number of disturbing and tumultuous activities at a motorcyclists' rally.
As a result, Nicole became upset and began to see a therapist, who uncovered information tending to show that the child was sexually abused by one of her male cousins, the children of the husband's sister, Aunt Debbie. The therapist, Susan Prugh, a clinical social worker, saw both children and described Nicole's relationship with her father as damaged from her traumatic experience at the motorcycle rally. Prugh also believes the child has persistent nightmares and is frightened of both living with her father and seeing her Aunt Debbie and CT Page 4966 Debbie's children. The child also reported acts of violence perpetrated by her father on her mother.
Prugh describes the father as not being perceptive or understanding of his children's needs and emotional feelings, especially those of Nicole, and recommended, among other things, that the children's therapy continue, that the father attend parenting classes, that the father have only supervised visitation for a period of six months, and that the children have no contact with their Aunt Debbie or her children. She also made a number of other recommendations relating to communication between the father and his children. The Family Services officer's report completed February 28, 1994, Defendant's Exhibit 1, essentially concurred with Prugh's principal recommendations. So did the children's counsel. The court finds Prugh's testimony credible.
The father went a long time, some three or four months, with no contact with his children and was strangely passive about his visitation rights and his rights and obligations under the joint custodial order. He failed to send his children Christmas presents or telephone them. During this time, they missed their father, and Nicole was especially hungry for contact with him. There is no doubt in the court's mind that he loves and cares for them and they him. At the same time, he has exercised poor judgment when they were with him. Also, when ordered on January 4, 1994, to attend the parenting education program, pursuant to Public Acts 1993, No. 93-319,[3] he failed to enter the program as of the time of trial, and was again ordered to do so.
Despite the plaintiff's substantial earnings over the past years, the parties' only assets are the plaintiff's annuity worth $62,671, valued as of March 31, 1994, less an outstanding loan of $4,800, his vested retirement benefit which would provide to him $534 per month at age 55 ($763 per month at age 65) and his workers' compensation claim.
It also must be pointed out that the defendant's family, specifically her grandparents, regularly and often provided the couple with funds during the marriage; in fact, the couple was subsidized to the extent of many thousands of dollars, including the $10,000 down payment for their Willimantic home, ultimately lost through foreclosure in January, 1994. The wife's grandmother also provided sums to CT Page 4967 save the husband's motor vehicle from repossession, and continued to provide the wife with substantial sums after the parties' separation.
The wife was the primary caretaker of the parties' children and the primary homemaker throughout the marriage, and although the husband was the principal breadwinner, the court finds that the wife's non-monetary contributions and the monetary contributions from her family were at least equal to the husband's financial contributions to the acquisition, preservation and appreciation in value of the parties' assets. The parties' propensities to dissipate money and waste their resources also appear in counterpoise, as they report no savings or liquid assets on their financial affidavits.
The court also concludes that notwithstanding the husband's present disability, he has superior earnings and earning capacity, vocational skills and employability than that of the wife, and thus a greater opportunity for future acquisition of capital assets and income.
The court also finds that due to Tyler's age, infectious salmonella condition, and resulting inability to be admitted to day care, the wife will need to be home with him until he is able to attend public school. She will therefore require some additional financial support from the plaintiff, in the form of time limited alimony, until Tyler begins to attend school and she can become self sufficient. The court believes that this is appropriate, even though she appears to be `living' with another person within the meaning of General Statutes § 46b-86(b), and past history shows a consistent pattern of gift giving to her by her grandmother. She shows a definite shortfall between her weekly child support and alimony payments which total $150, and her weekly expenses of $428. This is so, even if the $100 per week `rent' she pays to her boyfriend is entirely excluded, thus reducing her expenses to $328 per week, when compared to the proposed child support order of $197 per week indicated by the child support guideline worksheet furnished.[4]
The court also finds an arrearage due the wife from the husband in the amount of $422.62 for unpaid medical bills.
The children's attorney submitted her bill for attorney's fees in the amount of $4,055, less $600 paid by the CT Page 4968 parties, leaving a balance due of $3,455, which the court finds fair and reasonable.
The wife's attorney submitted a bill for her attorney's fees for 81.25 hours at $125 per hour, rounded to $10,150 plus $295.42 in costs. The court finds her hourly rate and the costs reasonable. The court also finds that a substantial portion of the time she worked on the case was due to the failure of the plaintiff to produce much of the financial information relating to his employers, his employment income, pension and annuity information and the like.
The court rejects as wholly without merit the plaintiff's claims that the wife is entitled to nothing, save child support, from this tumultuous eight and one-half year marriage, and that any distribution from the plaintiff's annuity and pension funds be held in trust for the children.
The court also rejects defendant's claim for an assignment of a portion of the plaintiff's anticipated lump sum worker's compensation award, as there was no evidence whatsoever as to the potential amount of the award, or that he will have additional permanent disability, and any division now appears speculative and may be illusory.
Said award has not yet vested in the plaintiff because there was no evidence that the plaintiff has reached maximum medical improvement. See [McCurdy v. State,]227 Conn. 261, 269 (1993). Nor is there any evidence of a voluntary agreement between the plaintiff and his employer nor a Worker's Compensation Commissioner's award granting him such an award. See [Roswell v. State,] 29 Conn. App. 432, 435 (1992). Moreover, General Statutes § 31-320 provides in relevant part: "All sums due for compensation under the provisions of this chapter shall be exempt from attachment and execution shall be nonassignable before and after award. . . ." Although the court is mindful that the underlying objective of the workers' compensation laws is to benefit the dependents of injured employees as well as the employees themselves,[5] the court, for the reasons stated cannot presently assign any portion of this prospective, unliquidated, unvested award to the defendant's wife or the children.
The court believes a more appropriate approach would be to create a lien on the fund to secure the financial orders CT Page 4969 hereinafter set forth in the light of the wife's uncontradicted testimony, which the court finds credible, that the husband's prior, very substantial worker's compensation award, was squandered by him.
The defendant's claim that the plaintiff should indemnify and save her harmless from any deficiency arising from the foreclosure of their home is moot, as no motion for a deficiency judgment was timely filed, and the period within which to do so has expired.
The court has considered all of the statutory criteria in General Statutes §§ 46b-62, 46b-81, 46b-82 and46b-84 in the light of the evidence and orders:
A decree dissolving the marriage on the ground of irretrievable breakdown shall enter.
Custody of the parties' minor children is awarded to mother; subject to rights of visitation in the father as ordered from the bench at the close of evidence on April 6, 1994, to wit: every Saturday from 12 noon to 2 p.m. of both children supervised by Mr. Kiss, the maternal grandfather, or other mutually agreed upon person, in a public place; 2 p.m. to 5 p.m. with Tyler; the father to transport Tyler home and the mother to be responsible for initial delivery of the children to the appointed meeting place. In no event shall either child have any contact, either in person or by telephone, with Aunt Debbie or her children.
The father shall be able to telephone the children at least twice a week and send them cards and letters and shall diligently participate in the parenting education program previously ordered.
The issue of visitation is re-referred to Family Services for further study and recommendation and is assigned for a review in court on the short calendar scheduled for August 22, 1994.
The plaintiff shall pay to the defendant child support in the amount of $98.50 per week per child, for a total of $197 per week, to be secured by immediate wage garnishment, which garnishment shall be portable as to all employers, due to the nature of plaintiff's employment and multiplicity of CT Page 4970 employers. Plaintiff shall pay as additional child support, when he regains employment, a sum equal to thirty (30%) percent[6] of his average net disposable income, defined as the amount available after the mandatory deductions from his gross income pursuant to the guidelines, in excess of $478 per week. He shall provide to the wife on October 1, 1994, and every six months thereafter, a statement of his gross earnings and deductions, and a list of his employers for said period, together with verification thereof, and the additional child support so calculated for said six month earnings period shall be paid in 26 equal weekly installments commencing forthwith.
So long as he is current on his child support and additional child support payments at the end of any calendar year, he shall be able to claim both children as dependents on his state and federal income tax returns.
He shall continue to maintain the children on his employment related (union) health and medical insurance, and shall pay one-half of any unreimbursed health and medical expenses within thirty days after he is presented with copies of the providers' bills and statement of benefits. The wife shall pay the other one-half. A qualified medical child support order[7] and an order pursuant to General Statutes § 46b-84(c) shall enter.
The plaintiff shall irrevocably designate the minor children as beneficiaries of the Union Labor Life Insurance policy in the face amount of $20,000 on his life, until the youngest child is 18 and shall execute and deliver to the wife an authorization directed to the carrier so she may be able to determine the good standing and status of said policy from time to time.
The plaintiff shall pay to the defendant the sum of $40 per week as alimony, which shall terminate upon the death of either party, the wife's remarriage, or July 1, 1996, whichever occurs first. Said alimony shall not be otherwise modifiable as to duration. The court concludes that the wife shall be able to seek employment by then and be self sufficient.
The plaintiff shall transfer to the defendant by Qualified Domestic Relations Orders (QDROs) the sum of $30,200 from his union annuity fund, free and clear of the loan CT Page 4971 thereon, and a sum equal to 37.5 percent of his retirement benefit valued as of April 1, 1994.
The plaintiff shall pay one-half of the following liabilities: Windham Hospital in the approximate amount of $2,300; Yankee Gas bill of $250; C.L.P. bill of $250; and he shall reimburse the wife the sum of $175 on account of Dr. Rosenlicht's bill within ninety days hereof. The wife shall pay the remaining balances of said liabilities.
Each shall take, have and own the personal property in their respective possessions and their vehicles, and each shall pay and save harmless the other from the debts shown on their respective financial affidavits, except as above stated.
In the light of his ability to pay, the plaintiff shall pay to wife's counsel, as his portion of her attorney's fees, the sum of $2,500 in equal monthly payments of $100 commencing one month after he resumes employment, or October 1, 1994, whichever occurs first, until paid, as a denial of attorney's fees in toto would undermine the other orders entered.
The plaintiff shall also pay the sum of $2,500 towards the attorney's fees for the children in equal monthly payments of $100 commencing one month after he resumes employment, or October 1, 1994, whichever occurs first, until paid. The wife shall pay the balance of $955 in equal monthly payments of $50 until paid.
A lien is created on two thirds of the husband's net worker's compensation claim (after deduction of attorney's fees and other necessary costs) to secure the child support, additional child support, alimony and counsel fees for the children and wife.
When said claim is reduced to funds in possession by plaintiff and his counsel (the same counsel who now represents him herein), said fund liened shall be held in an interest-bearing account by such counsel, and a copy of the bank statement shall be annually forwarded to counsel for the wife. In the event said alimony and counsel fees are paid, and the child support is current as of April 1, 1999, then said lien shall be discharged, and the funds released to the plaintiff. CT Page 4972
The plaintiff shall pay the arrearage of $422.62 due the wife, at the rate of $5 per week until paid.
Pursuant to General Statutes § 46b-11, pages 4 through 7, inclusive, of this memorandum shall be kept confidential and not open to public inspection except upon order of the court.
Teller, J.