******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LOUIS MARTINOLI *v.* STAMFORD POLICE DEPARTMENT ET AL.
## (AC 45229)

Elgo, Seeley and DiPentima, Js.

*Syllabus*

The defendants appealed from the decision of the Compensation Review Board affirming an award by the Workers' Compensation Commissioner for the Seventh District of total incapacity benefits to the plaintiff. The plaintiff had retired from his position as a police officer in the Stamford Police Department in 1999, shortly after he was awarded permanent partial disability benefits, and he became temporarily totally disabled in 2015. On appeal, the defendants claimed, inter alia, that the board improperly failed to determine that the plaintiff should be entitled, at a maximum, to temporary total disability benefits calculated using the minimum compensation rate as of the plaintiff's 2015 date of incapacity. *Held*:

The board properly upheld the commissioner's denial of the defendants' request for a finding that the temporary total disability compensation rate should be based on the fifty-two weeks of earnings prior to the plaintiff's date of incapacity, which would have resulted in a compensation rate of zero dollars, as in cases in which there is a gap of time between the date of the injury and the date of incapacity, the compensation rate must be calculated using the date of incapacity, and, accordingly, pursuant to statute (§ 31-310 (a)), the plaintiff's compensation rate must be based on the prevailing wages of Stamford police officers at the time of the plaintiff's date of incapacity.

The board properly determined that the defendants' claim that they were entitled to a credit against a certain increased permanent partial impairment award for any temporary total disability benefits paid after the plaintiff's date of maximum medical improvement was not ripe for review, as the commissioner had scheduled further hearings to address the issue of credits due to the defendants and further factual development was necessary prior to any review by the board or by this court.

Argued September 18, 2025—officially released March 10, 2026

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Seventh District awarding the plaintiff certain disability benefits, brought to the Compensation Review Board, which affirmed the commissioner's decision; thereafter, the defendants appealed to this court, *Alvord*, *Moll* and *Cradle*, *Js.*, which reversed the board's decision and remanded the case with direction to reverse the commissioner's decision, and the plaintiff,

on the granting of certification, appealed to the Supreme Court, which reversed the judgment of this court and remanded the case to this court for further proceedings; subsequently, Dawn Re, the administrator of the estate of the plaintiff, was substituted as the plaintiff. *Affirmed.*

*Scott Wilson Williams*, for the appellants (defendants).

*Andrew J. Morrissey*, for the appellee (substitute plaintiff).

*Opinion*

DiPENTIMA, J. This case returns to the court on remand from our Supreme Court. See *Martinoli* v. *Stamford Police Dept.*, 350 Conn. 868, 871, 326 A.3d 1104 (2024). The defendants, the Stamford Police Department (department) and PMA Management Corp. of New England, Inc.,[1] appealed from the decision of the Compensation Review Board (board) affirming an award of total incapacity benefits to the claimant, Louis Martinoli,[2] under General Statutes § 31-307 (a). On appeal, the defendants claimed, inter alia, that the board erred in affirming the decision of the Workers' Compensation Commissioner for the Seventh District (commissioner) awarding temporary total disability benefits because, pursuant to the language of § 31-307 (a), the claimant was not entitled to those benefits. See *Martinoli* v. *Stamford Police Dept.*, 220 Conn. App. 874, 875, 299 A.3d 1258 (2023), rev'd, 350 Conn. 868, 326 A.3d 1104 (2024). This court reversed the decision of the board, reasoning that the claimant was ineligible to receive benefits under § 31-307 (a) because, prior to the onset of his incapacity, he had voluntarily retired from the workforce with no intention of returning. Id., 880–81. As a result of that conclusion, this court did not

---

[1] PMA Management Corp. of New England, Inc., is the workers' compensation insurer for the department.

[2] As explained subsequently in this opinion, Martinoli died during the pendency of his appeal before our Supreme Court, and the administrator of his estate subsequently was substituted as the plaintiff. Accordingly, we refer to Martinoli as the claimant throughout this opinion.

address two alternative claims raised by the defendants in their appeal.[3] Id., 875 n.3.

After granting the claimant's petition for certification to appeal, our Supreme Court reversed this court's judgment on the basis of its decision in *Cochran* v. *Dept. of Transportation*, 350 Conn. 844, 327 A.3d 901 (2024), released on the same day, in which the court held that, under the plain and unambiguous language of §31-307 (a), a claimant who has sustained a compensable workplace injury under the Workers' Compensation Act (act), General Statutes §31-275 et seq., is eligible to receive total incapacity benefits when the total incapacity occurs after the claimant's voluntary retirement from the workforce. See *Martinoli* v. *Stamford Police Dept.*, supra, 350 Conn. 870; see also *Cochran* v. *Dept. of Transportation*, supra, 865. Our Supreme Court remanded the case to this court "with direction to consider the defendants' remaining claims."[4] *Martinoli* v. *Stamford Police Dept.*, supra, 871.

In accordance with that order, we now address the defendants' claims that the board erred in failing (1) to determine that the claimant should be entitled, at a maximum, to temporary total disability benefits calculated using the minimum compensation rate as of July 15, 2015, the date of incapacity, and (2) to find that any temporary total disability benefits paid to the claimant after the May 10, 2016 date of maximum medical improvement

[3] This court described the defendants' alternative claims as follows: "First, the defendant[s] [claim] that the board erred in determining that temporary total disability benefits shall be paid pursuant to a minimum compensation rate as of July 15, 2015, the date of total incapacity, as opposed to January 19, 1999, the date of injury. Second, the defendant[s] [claim] that the board failed to find that any temporary total disability benefits paid to the claimant after the May 10, 2016 date of maximum medical improvement would be a credit against the increase in the permanent partial impairment award." *Martinoli* v. *Stamford Police Dept.*, supra, 220 Conn. App. 875 n.3.

[4] Our Supreme Court explained: "We will not address the defendants' two alternative claims, which the Appellate Court did not reach in its decision below and which the parties have not briefed or argued before this court due to the narrow scope of the certified question." *Martinoli* v. *Stamford Police Dept.*, supra, 350 Conn. 871.

should be credited against the 19.25 percent increase in the permanent partial impairment award. We affirm the decision of the board.

This court previously set forth the following relevant facts and procedural history in *Martinoli* v. *Stamford Police Dept.*, supra, 220 Conn. App. 874, which we supplement as necessary with additional undisputed facts. "On November 26, 1975, the [claimant] became a 'regular member' of the department. . . . [T]he [claimant] established a compensable claim for coronary artery disease, hypertension, and congestive heart failure pursuant to General Statutes § 7-433c[5] [based on a January 19, 1999 date of injury]. On March 3, 1999, the [claimant] underwent quadruple bypass surgery . . . ." (Footnote in original.) Id., 876.

On June 29, 1999, the commissioner[6] issued a finding and award concluding that the claimant was entitled to benefits pursuant to § 7-433c. In a supplemental finding and award issued on October 4, 1999, the commissioner

[5] "General Statutes § 7-433c (a) provides in relevant part that, 'in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment . . . .' " *Martinoli* v. *Stamford Police Dept.*, supra, 220 Conn. App. 876 n.4.

[6] In 2021, the administrative adjudicators for the Workers' Compensation Commission (commission) became known as administrative law judges, rather than their former title of workers' compensation commissioners. See Public Acts 2021, No. 21-18, § 1 (P.A. 21-18). Because the events at issue in this appeal occurred prior to October 1, 2021, the effective date of P.A. 21-18, in this opinion we use the terms workers' compensation commissioner and commissioner. See *Martinoli* v. *Stamford Police Dept.*, supra, 220 Conn. App. 875 n.2; see also *Pelc* v. *Southington Dental Associates, P.C.*, 232 Conn. App. 393, 395 n.1, 337 A.3d 50, cert. denied, 352 Conn. 910, 336 A.3d 84 (2025).

found that the claimant was entitled to a permanent partial disability rating of 43.75 percent to the heart and that he had reached maximum medical improvement on July 6, 1999. Accordingly, the commissioner awarded the claimant 227.5 weeks of permanent partial disability payments, commencing on July 6, 1999, at a rate of $628 per week.[7]

"On October 15, 1999, at age sixty-four, the [claimant] retired from the department. Following his retirement, the [claimant] never intended to return to the workforce, and he has not worked for any employer since that date.

"On July 15, 2015, when he was eighty years old, the [claimant] was admitted to the hospital with mid-abdominal pain after eating a heavy meal of fatty foods, developed atrial fibrillation, and proceeded to sustain a stroke (July, 2015 events). The defendant[s] contested compensability of the July, 2015 events based on the fact that the atrial fibrillation and subsequent stroke manifested after retirement. On May 4, 2018, following a formal hearing, the commissioner concluded that the [claimant's] claim for compensability and benefits for his atrial fibrillation and stroke is compensable as it flowed from the underlying accepted claims of hypertension, coronary artery disease, and congestive heart failure."[8] (Internal quotation marks omitted.) *Martinoli* v. *Stamford Police Dept.*, supra, 220 Conn. App. 876–77.

Pursuant to a stipulated finding and award approved on September 7, 2018,[9] the claimant was paid an increased

---

[7] The commissioner explained that "[t]he claimant on January 19, 1999, had an average weekly wage from the city of Stamford of $1939.88 with a resulting maximum temporary total rate of $764.00 and maximum permanent partial disability rate of $628.00."

[8] "The defendant[s] appealed from the commissioner's decision to the board, which affirmed the commissioner's determination. See *Martinoli* v. *Stamford Police Dept.*, No. 6271, CRB 7-18-5 (April 24, 2019). The defendant[s] appealed from the board's affirmance to this court but subsequently withdrew [their] appeal following the release of our Supreme Court's decision in *Dickerson* v. *Stamford*, 334 Conn. 870, 224 A.3d 1156 (2020), which allowed for flow-through causation in § 7-433c cases." *Martinoli* v. *Stamford Police Dept.*, supra, 220 Conn. App. 877 n.5.

[9] The return of record in this case does not include the September 7, 2018 stipulated finding and award.

19.25 percent permanent partial impairment to the heart, for a total impairment of 63 percent, using a May 10, 2016 date of maximum medical improvement.

"At some point thereafter,[10] the [claimant] sought [temporary total disability] benefits, pursuant to § 31-307, from the defendant[s]. On September 1 and November 10, 2020, the commissioner held hearings to determine whether the [claimant] was entitled to temporary total disability benefits in light of the fact that his total disability status commenced at a time when he was retired. The parties stipulated that the [claimant] ha[d] been [temporarily] totally disabled since July 15, 2015, but disagreed as to whether the [claimant] was entitled to § 31-307 benefits [and the extent of that indemnity benefit]. During the hearings, the commissioner heard testimony from the [claimant] and the [claimant's] daughter. Additionally, the [claimant] introduced into evidence six exhibits consisting of reports from various medical providers." (Footnote added; internal quotation marks omitted.) *Martinoli* v. *Stamford Police Dept.*, supra, 220 Conn. App. 877.

On March 11, 2021, the commissioner issued her findings and award. In her decision, the commissioner stated that "[t]he sole issue for determination is the claimant's entitlement to temporary total disability benefits in light of the fact that his total disability status commenced at a time when he was retired." The commissioner concluded that "[§] 31-307 is clear. If a claimant becomes totally disabled, they 'shall' receive weekly benefits. . . . Pursuant to [§] 31-307, it is irrelevant whether or not the claimant was working at the time he becomes totally disabled. . . . The claimant has been totally disabled since July 15, 2015. . . . The claimant has been totally disabled for greater than five years." On the basis of those conclusions, the commissioner made the following orders: (1) "The [defendants] shall provide the claimant with temporary total disability benefits commencing July

[10] The return of record in this case does not include the claim for benefits filed by the claimant.

15, 2015, with applicable cost of living adjustments pursuant to [General Statutes §] 31-307a (c),” and (2) “[t]his award of [§] 31-307 benefits remains subject to the [§] 31-307 (e) Social Security retirement offset and applicable statutory cap in addition to credit for any advances made to date.”

Thereafter, the defendants filed a motion to correct the finding and award seeking to add, inter alia, orders related to the compensation rate for the temporary total disability benefits awarded and their entitlement to a credit for permanent partial impairment benefits.[11] Specifically, the defendants sought, in relevant part, additional orders providing that, “[i]f the claimant is eligible for a wage benefit, the compensation rate should be based on the fifty-two weeks of earnings prior to the date of incapacity which, in this case, equates to zero because the claimant chose not to and did not work during the fifty-two weeks prior to the date of incapacity,”[12] and, “[p]ursuant to [*Estate of Syzmaszek* v. *Meriden*, No. 5346, CRB 6-08-5 (April 2, 2009)], the [defendants] have a credit for the 19.25 percent increase in permanent partial impairment to the heart and the additional 18 to 20 percent impairment opined by [the claimant’s medical

---

[11] The defendants had raised these issues in their memorandum of law and in their proposed findings and conclusions, filed on February 5, 2021, prior to the commissioner’s findings and award issued on March 11, 2021.

[12] The defendants requested that the commissioner add this conclusion on the basis of the board’s decision in *Partlow* v. *Petroleum Heat & Power Co.*, No. 5432, CRB 7-09-2 (February 9, 2010). The defendants also sought the addition of the following related conclusions: “In [*Partlow*], the [board] found, based upon the precedent of *Mulligan* v. *F. S. Electric*, 231 Conn. 529, 651 A.2d 254 (1994), and *Moxon* v. *Board of Trustees of Regional Community Colleges*, 37 Conn. App. 648, 657 A.2d 699, cert. denied, 234 Conn. 908, 659 A.2d 1209 (1995), that the ‘date of incapacity’ standard, utilizing the wages in the fifty-two weeks prior to incapacity, should be used when there is a gap between the date of injury and the date of incapacity for the determination of an average weekly wage and compensation rate for § 31-307 benefits” and that, “[i]n [*Partlow*], the board noted that *Mulligan* restated the holding reached in *Rousu* v. *Collins Co.*, 114 Conn. 24, 157 A. 264 (1931), that ‘[t]he just measure of the value of the earning power of an employee and the correlative loss incurred by him would seem to relate to his earnings at the time the loss occurs through incapacity to work, rather than his earnings at an earlier time.’ ”

providers] against any temporary total disability benefits that may be due after the May 10, 2016 date of maximum medical improvement.'' In ruling on the motion to correct, the commissioner denied the defendants' request to add an order providing that the claimant's compensation rate was zero dollars. The commissioner granted in part and denied in part the defendants' request to add an order providing that they were entitled to a credit.

On March 23, 2021, the commissioner issued her amended findings and award. The commissioner corrected a scrivener's error that had been contained in the original decision and added a conclusion to provide for ''[f]urther hearings . . . with regard to the applicable statutory cap in addition to credit for any advances made to date . . . .''

On March 24, 2021, the defendants appealed to the board, claiming, inter alia, that the commissioner erred in ''determining that the claimant was entitled to temporary total disability benefits after retiring and having no intention to ever reenter the workforce''; ''failing to determine that any entitlement to temporary [total] disability benefits should be paid at a benefit rate based on earnings at the date of incapacity rather than the date of injury''; and ''failing to determine that the [defendants] are entitled to a credit against the permanent partial disability award for any indemnity benefits paid after maximum medical improvement was reached.'' On July 30, 2021, the board held a hearing on the defendants' claims.[13]

On January 11, 2022, the board affirmed the commissioner's decision. The board's decision, like the commissioner's decision, focused in large part on the defendants' primary argument, namely, that the claimant was ineligible to receive benefits under § 31-307 (a) because, prior to the onset of his incapacity, he had voluntarily retired from the workforce with no intention of returning. The board rejected that argument, explaining, inter alia, that the claimant was entitled to benefits pursuant to

_____

[13] The defendants did not provide this court with a transcript of the July 30, 2021 hearing before the board.

§31-307 (a) because "binding precedent interpreting this statute has eliminated the necessity to be available for work in order to be eligible for temporary total disability benefits."

With respect to the defendants' remaining claims—"that the [commissioner] erred by failing to reset the compensation rate or [to credit] prior permanent partial disability payments"—the board's conclusions were set forth in a single paragraph. Specifically, the board stated: "The [defendants] . . . argue that the compensation rate applied in this case is inaccurate, citing [*Partlow* v. *Petroleum Heat & Power Co.*, No. 5432, CRB 7-09-2 (February 9, 2010)], that they are entitled to a credit against payments for the increased permanent partial disability award, and that [General Statutes] §7-433b (b) and [General Statutes (Rev. to 1997)] §31-307 (e)[14] reduce the weekly compensation payment that may be owed to the claimant. We note that the [commissioner] scheduled further hearings to address the issue of credits due to the [defendants] and therefore we do not believe that issue is ripe for appellate adjudication. As for the compensation rate, we believe that the precedent in *Partlow* is inapplicable to a case such as this one where there is an established long-standing compensation rate in place." (Footnote added.) The board explained, in a footnote, that, "[i]n [*Partlow*], the finding appealed to this tribunal, found 'no voluntary agreement had been issued establishing the claimant's average weekly wage or base compensation rate.' In this case, a supplemental

_____

[14] General Statutes (Rev. to 1997) §31-307 (e) provides: "Notwithstanding any provision of the general statutes to the contrary, compensation paid to an employee for an employee's total incapacity shall be reduced while the employee is entitled to receive old age insurance benefits pursuant to the federal Social Security Act. The amount of each reduced workers' compensation payment shall equal the excess, if any, of the workers' compensation payment over the old age insurance benefits."

Although the legislature repealed this provision in 2006; see Public Acts 2006, No. 06-84, §1; it continues to apply to workers, including the claimant, who were injured prior to the date of repeal. See *Cochran* v. *Dept. of Transportation*, supra, 350 Conn. 867 n.13; see also *Hummel* v. *Marten Transport, Ltd.*, 114 Conn. App. 822, 826 n.2, 970 A.2d 834, cert. denied, 293 Conn. 907, 978 A.2d 1109 (2009).

finding and award dated October 4, 1999, established the claimant's compensation rate."[15]

From that decision, the defendants appealed. Their primary claim was that the board erred in affirming the commissioner's decision to award temporary total disability benefits to the claimant who was not entitled to those benefits because he had voluntarily retired from the workforce with no intention of returning. See *Martinoli* v. *Stamford Police Dept.*, supra, 220 Conn. App. 879. As our Supreme Court has resolved that issue in the claimant's favor; see *Martinoli* v. *Stamford Police Dept.*, supra, 350 Conn. 871; the defendants' appeal returns to this court pursuant to our Supreme Court's remand order to address the defendants' remaining claims regarding the calculation of the compensation rate and whether they are entitled to a credit for any temporary total disability benefits paid after May 10, 2016, the date of maximum medical improvement.

Following the remand from our Supreme Court, we sua sponte ordered the parties to file supplemental briefs "for the limited purpose of updating their original briefs with respect to the claims to be considered on remand." The parties filed supplemental briefs in accordance with our order, and, in doing so, the defendants brought to our attention the death of the claimant during the pendency of the appeal before our Supreme Court. Dawn Re, the administrator of the claimant's estate, subsequently was substituted as the plaintiff.[16] Thereafter, the parties appeared before us for oral argument.

Before addressing the defendants' claims, we first set forth the standard of review and legal principles

[15] See footnote 7 of this opinion.

[16] On April 1, 2025, this court issued an order stating in relevant part: "It is hereby ordered, sua sponte, that this appeal shall be dismissed in the absence of a proper party to defend the appeal unless, on or before June 2, 2025, a motion to substitute the executor or administrator of the claimant's estate is filed. Any motion to substitute shall include supporting documentation from the probate court." In response to that order, the claimant's counsel filed a motion to substitute Dawn Re, the administrator of the claimant's estate, as the plaintiff, which this court granted.

applicable to workers' compensation appeals. "The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . In addition, we are mindful of the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees." (Citation omitted; internal quotation marks omitted.) *Esposito* v. *Stamford*, 350 Conn. 209, 216–17, 323 A.3d 1066 (2024).

I

The defendants first claim that the board erred in upholding the commissioner's decision because the commissioner improperly denied their request to order that the claimant was entitled to a compensation rate of zero dollars based on his wages during the weeks preceding his date of incapacity. Specifically, the defendants contend that "[t]he case law supports a temporary total disability benefit compensation rate based on the fifty-two weeks of earnings prior to the date of incapacity and thus we should look to the wages for the fifty-two weeks prior to [the claimant] becoming disabled in 2015. The average weekly wage would be zero given that his incapacity began

after the long-standing decision to retire and remain out of the workforce.''

The plaintiff counters that the board properly upheld the commissioner's decision because the claimant is entitled to receive benefits based on the compensation rate established in the commissioner's October 4, 1999 supplemental finding and award. The plaintiff also argues, in the alternative, that if the compensation rate established in the 1999 decision does not apply, then the claimant's compensation rate must be based on the prevailing wages of Stamford police officers at the time of the claimant's date of incapacity. We agree with the plaintiff's alternative argument.

The wage calculation formula for the act is set forth in General Statutes § 31-310 (a), which provides in relevant part: ''For the purposes of this chapter, the average weekly wage shall be ascertained by dividing the total wages received by the injured employee from the employer in whose service the employee is injured during the fifty-two calendar weeks immediately preceding the week during which the employee was injured, by the number of calendar weeks during which, or any portion of which, the employee was actually employed by the employer, but, in making the computation, absence for seven consecutive calendar days, although not in the same calendar week, shall be considered as absence for a calendar week. . . . When the period of employment immediately preceding the injury is computed to be less than a net period of two calendar weeks, the employee's weekly wage shall be considered to be equivalent to the average weekly wage prevailing in the same or similar employment in the same locality at the date of the injury . . . .''

Although the date of the injury typically is used in calculating the compensation rate in accordance with § 31-310 (a), both this court and our Supreme Court have concluded that, in cases in which there is a gap of time between the date of the injury and the date of incapacity, the compensation rate must be calculated using the date of incapacity. See *Mulligan* v. *F. S. Electric*, 231 Conn. 529, 541, 651 A.2d 254 (1994); *Rousu* v. *Collins Co.*,

114 Conn. 24, 31, 157 A. 264 (1931); see also *Stevens* v. *Raymark Corp./Raybestos Manhattan*, 28 Conn. App. 226, 228, 610 A.2d 710 ("the relevant date for determining compensation to an injured worker is the date of his incapacity to work . . . where the events leading to a worker's injury and the incapacity to work do not occur simultaneously" (citation omitted)), cert. denied, 223 Conn. 921, 614 A.2d 830 (1992).

In *Rousu* v. *Collins Co.*, supra, 114 Conn. 24, the claimant was disabled on December 16, 1930, by the occupational disease pneumoconiosis, which was found to be directly traceable to his employment with the defendant between 1917 and 1922. Id., 26. Our Supreme Court determined that the correct calculation for the claimant's compensation rate was that based on the claimant's earnings preceding his disability, i.e., his date of incapacity, in 1930. Id., 30–31. Our Supreme Court explained: "In the usual case of an industrial accident, the injury and the incapacity are substantially coincident. . . . In cases like the present, where a considerable period (here eight years) intervenes between the actual injury and the consequent incapacity, determination as to whether the date of the former or the latter is to be taken as the basis of the award becomes of practical importance. There can be no compensation without incapacity. Compensation under our [a]ct is based upon incapacity, total or partial, and hence is based upon loss of earning power. . . . The just measure of the value of the earning power of an employee and the correlative loss incurred by him would seem to relate to his earnings at the time the loss occurs through incapacity to work, rather than his earnings at an earlier time, perhaps so remote that, through changing conditions, personal or industrial, or both, his earnings at that time no longer accurately or correctly reflect the present value of the earning power of the workman." (Citations omitted; internal quotation marks omitted.) Id.

In *Mulligan* v. *F. S. Electric*, supra, 231 Conn. 529, our Supreme Court held that the date of incapacity rule set forth in *Rousu* "applies with equal force to a claim arising out of a traumatic injury as to a claim arising out

of an occupational disease."[17] Id., 543; see also R. Carter et al., 19 Connecticut Practice Series: Workers' Compensation Law (Supp. 2025) §8:121, p. 394 (summarizing *Mulligan* and explaining that date of incapacity is used "in cases where the claimant suffers a traumatic injury which does not cause contemporaneous incapacity, but causes delayed incapacity").[18] The court explained that the holding in *Rousu* was "an implementation of the legislature's intent to compensate an incapacitated worker based upon his loss of earning power," and, therefore, the

---

[17] In *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 677 A.2d 1356 (1996), our Supreme Court concluded that, for purposes of General Statutes §31-349, which governs compensation for a second injury, "a claimant's 'disability' is to be evaluated, not in terms of loss of earning capacity, but, rather, in terms of the claimant's medical impairment." Id., 492. We note that the court stated that, "to the extent that dicta in cases such as [*Mulligan*] . . . suggest otherwise, we disavow that language." Id., 492–93. The court specifically cited the language in *Mulligan*, stating that "[c]ompensation under our [workers' compensation statute] is based upon incapacity, total or partial, and hence is based upon earning power." (Internal quotation marks omitted.) Id., 492.

The holding in *Mulligan* on using the date of incapacity to calculate a claimant's compensation rate remains good law. See R. Carter et al., 19 Connecticut Practice Series: Workers' Compensation Law (Supp. 2025) §8:121, p. 394 ("the proposition that the compensation rate is based on the date of incapacity remains good law"); see also *Cochran* v. *Dept. of Transportation*, supra, 350 Conn. 861 n.9 (citing *Mulligan* in support of proposition that, "[f]or purposes of wage calculation, 'the date of injury' in §31-310 is construed to mean the date of incapacity").

[18] The commentary in the Connecticut Practice Series describes the rule set forth in *Mulligan* as "[a] somewhat anomalous rule"; 19 R. Carter et al., supra, §1:5 n.2, p. 9; and a "rarely-invoked exception . . . ." Id., §8:121, p. 394. It states that "[the *Mulligan*] decision and the resulting rule are perhaps wrong" and adds that, "[i]n practice, the claimant's wages in the [fifty-two] weeks prior to the date of injury are virtually always used to determine the average weekly wage, and the *Mulligan* rule, which can provide a rate higher or lower than the rate based on the date of injury, is frequently overlooked." Id., §8:121, pp. 394–95.

Irrespective of that commentary, however, we remain bound by our Supreme Court's decision in *Mulligan*. See, e.g., *Mashantucket Pequot Tribal Nation* v. *Factory Mutual Ins. Co.*, 224 Conn. App. 429, 458 n.29, 313 A.3d 1219 (2024) ("[I]t is axiomatic that, [a]s an intermediate appellate court, we are bound by Supreme Court precedent and are unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.)).

rule set forth therein is not limited to cases involving a disability caused by an occupational disease or cases in which the date of the worker's injury is not ascertainable. *Mulligan* v. *F. S. Electric*, supra, 542–43; see also id., 543 n.7.

In the present case, although the commissioner found that the claimant was entitled to temporary total disability benefits pursuant to §31-307 (a), she did not make a specific finding as to the claimant's compensation rate.[19] The commissioner did, however, deny the defendants' request to add a conclusion or order providing that, "[i]f the claimant is eligible for a wage benefit, the compensation rate should be based on the fifty-two weeks of earnings prior to the date of incapacity which, in this case, equates to zero because the claimant chose not to and did not work during the fifty-two weeks prior to the date of incapacity."

The defendants requested such an order on the basis of the board's decision in *Partlow* v. *Petroleum Heat & Power Co.*, supra, No. 5432, CRB 7-09-2. In *Partlow*, the claimant suffered an injury to his right shoulder on November 8, 2000. Id. He did not miss any time from work due to this injury until he underwent shoulder surgery on March 7, 2008. Id. The commissioner had applied a "date of injury" standard to determine the claimant's compensation rate. Id. The claimant appealed to the board, claiming that precedents such as *Mulligan* established a "date of incapacity" standard for determining the compensation rate. Id. The board agreed with the claimant, concluding that "[t]he claimant's wage rate and compensation rate must be established as of the date of his incapacity." Id. The board explained: "We have not been presented with any persuasive legislative or appellate precedent that in our opinion, serves to diminish the binding effect of the precedent in [*Mulligan*] . . . [which] clearly establish[es] that for traumatic injuries, the 'date of incapacity' should be the applicable date for

[19] In the commissioner's March 23, 2021 amended findings and award, she ordered "[f]urther hearings . . . with regard to the applicable statutory cap in addition to credit for any advances made to date . . . ."

calculation of a wage rate and compensation rates, not the 'date of injury.'"[20] Id.

Here, the board upheld the commissioner's decision on the basis that "the precedent in *Partlow* is inapplicable to a case such as this one where there is an established long-standing compensation rate in place." The board explained, in a footnote, that, "[i]n [*Partlow*], the finding appealed to this tribunal found 'no voluntary agreement had been issued establishing the claimant's average weekly wage or base compensation rate.' In this case, a supplemental finding and award dated October 4, 1999, established the claimant's compensation rate."

We disagree with the board insofar as it concluded that the compensation rate set forth in the commissioner's October 4, 1999 decision applies to the claimant's present claim for temporary total disability benefits. Although the board characterized the rate set forth in the 1999 decision as the "established long-standing compensation rate," nothing in the record indicates that the claimant had previously sought temporary total disability benefits or that that compensation rate had ever been applied.[21] Additionally, there is nothing in the record to indicate that the compensation rate set forth in that decision

[20] The board also cited this court's decision in *Moxon* v. *Board of Trustees of Regional Community Colleges*, 37 Conn. App. 648, 657 A.2d 699, cert. denied, 234 Conn. 908, 659 A.2d 1209 (1995). See *Partlow* v. *Petroleum Heat & Power Co.*, supra, No. 5432, CRB 7-09-2. In *Moxon*, this court stated that "[t]he relevant date for determining compensation to an injured worker is the date of that worker's incapacity to work, which might not necessarily be the date of injury. . . . [In] the case of an injury occurring over a period of time . . . the appropriate calculation of benefits would relate to the time of the manifestation of the injury, i.e., the date that incapacity from the injury occurred." *Moxon* v. *Board of Trustees of Regional Community Colleges*, supra, 651–53.

[21] Along these same lines, we also are not persuaded by the plaintiff's argument that the compensation rate set forth in the commissioner's 1999 decision should apply as "the law of the case." In the case cited by the plaintiff, *Thorn* v. *Utz Quality Foods, Inc.*, No. 6253, CRB 5-18-3 (July 18, 2019), the law of the case doctrine was applied in a different context. *Thorn* involved a claim for compensation under the relapse statute, General Statutes § 31-307b. Although the compensation rate was at issue, the law of the case doctrine did not apply to a previously established compensation rate but, rather, to a previous finding

was the result of a stipulation or voluntary agreement between the parties.

The commissioner explained in the October 4, 1999 decision that the compensation rate set forth in that decision was calculated using the claimant's wages preceding his date of injury.[22] Applying that compensation rate to the claimant's present claim, therefore, would run contrary to our Supreme Court's holding in *Mulligan*. Specifically, considering the gap of time between the claimant's January 19, 1999 date of injury and his July 15, 2015 date of incapacity, the rule set forth in *Mulligan* indicates that the claimant's compensation rate must be calculated using his date of incapacity. See *Mulligan* v. *F. S. Electric*, supra, 231 Conn. 543; see also *Partlow* v. *Petroleum Heat & Power Co.*, supra, No. 5432, CRB 7-09-2.

Nevertheless, we conclude that the board properly upheld the commissioner's denial of the defendants' request because, even applying the claimant's date of incapacity, the compensation rate would not be zero dollars. As an initial matter, the defendants' contention that the claimant is entitled to a compensation rate of zero dollars because he earned no wages in the fifty-two weeks

establishing the date of the original injury and assigning liability based on that date. See id.

Moreover, the law of the case doctrine may be applied only "in the absence of some new or overriding circumstance." (Emphasis omitted; internal quotation marks omitted.) *Landmark Development Group, LLC* v. *Water & Sewer Commission*, 184 Conn. App. 303, 315, 194 A.3d 1241, cert. denied, 330 Conn. 937, 195 A.3d 385 (2018), and cert. denied, 330 Conn. 937, 195 A.3d 386 (2018); see also *State* v. *Ralph B.*, 162 Conn. App. 583, 598 n.9, 131 A.3d 1253 (2016) (court improperly applied law of case doctrine where circumstances underlying decisions were different). Here, the circumstances were significantly different by the time the claimant made his present claim for temporary total disability benefits, as he had retired and approximately sixteen years had passed between the 1999 decision and his July 15, 2015 date of incapacity.

[22] In the October 4, 1999 supplemental finding and award, the commissioner explained: "The claimant on January 19, 1999, had an average weekly wage from the city of Stamford of $1939.88 with a resulting maximum temporary total rate of $764 and maximum permanent partial disability rate of $628."

prior to his date of incapacity, as a result of the fact that he had retired, undermines our Supreme Court's conclusion in the present case and in *Cochran* that a claimant is eligible to receive benefits under § 31-307 even when total incapacity occurs after the claimant's voluntary retirement from the workforce. See *Martinoli* v. *Stamford Police Dept.*, supra, 350 Conn. 870; *Cochran* v. *Dept. of Transportation*, supra, 350 Conn. 865. The defendants' proposed calculation of the claimant's compensation rate under § 31-310 (a), therefore, cannot prevail. See, e.g., *Diaz* v. *Bridgeport*, 208 Conn. App. 615, 624, 266 A.3d 909 (2021) (interpretation that was inconsistent with and undermined purpose of statute was not reasonable).

Moreover, although *Partlow* supports the defendants' argument to use the claimant's date of incapacity, that case does not support their argument that the claimant's compensation rate should be calculated using his wages, or lack thereof, during the fifty-two weeks prior to that date. In *Partlow*, the claimant "did not miss any time from work" due to his injury until the date of his incapacity. See *Partlow* v. *Petroleum Heat & Power Co.*, supra, No. 5432, CRB 7-09-2. Accordingly, *Partlow* did not address the issue presented in the present case, in which the claimant was no longer working and therefore had no income during the weeks preceding his date of incapacity.[23]

Finally, and most significantly, § 31-310 (a) includes a provision for claimants who were not employed during the time period immediately preceding their date of incapacity. Specifically, § 31-310 (a) provides that, "[w]hen the period of employment immediately preceding the injury is computed to be less than a net period of

---

[23]The defendants also rely on *Garvey* v. *Atlas Scenic Studios Ltd.*, No. 5493, CRB 4-09-9 (February 14, 2012). In *Garvey*, the claimant's date of incapacity was used to calculate his compensation rate, pursuant to the rule set forth in *Mulligan*, because there was a six month gap between the date of injury and the date of incapacity. Id. In that case, however, as in *Partlow*, the claimant "did not lose any time from work at all" between the date of injury and the date of incapacity. Id. Accordingly, that case also does not shed light on the particular issue before us.

two calendar weeks, the employee's weekly wage shall be considered to be equivalent to the average weekly wage prevailing in the same or similar employment in the same locality at the date of the injury . . . ."

In *Cochran*, our Supreme Court stated that "[t]his formula applies to workers whose incapacity occurs after retirement." *Cochran* v. *Dept. of Transportation*, supra, 350 Conn. 861; see also *Green* v. *General Dynamics Corp.*, 245 Conn. 66, 75, 712 A.2d 938 (1998) ("[w]hen an employee is retired and unemployed at [the time of injury], the 'employment previous to injury' is necessarily less than two weeks and the contemporaneous prevailing weekly wage is considered the employee's weekly wage").[24] In addition, although the language in that provision refers to "the date of the injury," our Supreme Court noted, in accordance with *Mulligan*, that "[f]or purposes of wage calculation, 'the date of injury' in § 31-310 is construed to mean the date of incapacity." *Cochran* v. *Dept. of Transportation*, supra, 861 n.9, citing *Mulligan* v. *F. S. Electric*, supra, 231 Conn. 544–45.

Accordingly, we are persuaded that the approach set forth in the plaintiff's alternative argument—that the claimant is entitled to a compensation rate based on the average weekly wage of a Stamford police officer at the time of his date of incapacity—is consistent with § 31-310 (a) and our Supreme Court's decisions in *Cochran* and *Mulligan*.[25] We conclude, therefore, that the board properly affirmed the commissioner's decision denying the defendants' request to order that the claimant was entitled to a compensation rate of zero dollars.

[24] Although *Green* v. *General Dynamics Corp.*, supra, 245 Conn. 66, involved calculating a compensation rate in the context of an occupational disease claim under General Statutes § 31-310c; see id., 75; our Supreme Court's decision in *Cochran*—which, like the present case, involved a claim for total incapacity benefits pursuant to § 31-307 (a)—suggests that the reasoning set forth in *Green* is not limited to that context. See *Cochran* v. *Dept. of Transportation*, supra, 350 Conn. 861 and n.10.

[25] As the commissioner noted, the claimant's compensation rate may be subject to the applicable statutory cap set forth in § 7-433b (b).

## II

The defendants also claim that they are entitled to a credit against the increased permanent partial impairment award for any temporary total disability benefits paid after the May 10, 2016 date of maximum medical improvement. The plaintiff counters that the defendants are not entitled to a credit because the temporary total incapacity benefits awarded pursuant to § 31-307 (a) and the permanent partial disability benefits awarded pursuant to General Statutes § 31-308 each compensate the claimant for distinct losses,[26] and, therefore, the payment of both types of benefits is not an impermissible double recovery. We do not address the merits of these respective arguments because we conclude that the defendants' claim is not ripe for adjudication by this court.

"[J]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter. . . . A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction. . . . [B]ecause an issue regarding justiciability raises a question of law, our appellate review [of a ripeness claim] is plenary. . . .

"[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature

---

[26] Our Supreme Court has explained that "§ 31-308 specifically provides that compensation for permanent partial disability shall be in addition to the usual compensation for total incapacity. While we have held that the [act] prohibits concurrent payment of benefits for permanent partial disability and temporary total [incapacity] . . . it is clear that these two types of benefits compensate an employee for different types of loss . . . and that the payment of . . . § 31-307 temporary total [incapacity] benefits does not discharge the obligation to pay § 31-308 permanent partial disability benefits at some point in the future." (Citations omitted; internal quotation marks omitted.) *Churchville* v. *Bruce R. Daly Mechanical Contractor*, 299 Conn. 185, 193, 8 A.3d 507 (2010); see also, e.g., *Gardner* v. *Dept. of Mental Health & Addiction Services*, 351 Conn. 488, 496–97, 331 A.3d 1203 (2025); *Esposito* v. *Stamford*, supra, 350 Conn. 220; *Cappellino* v. *Cheshire*, 226 Conn. 569, 577–78, 628 A.2d 595 (1993).

adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Emphasis omitted; internal quotation marks omitted.) *Francis* v. *Board of Pardons & Paroles*, 338 Conn. 347, 358–59, 258 A.3d 71 (2021); see also *Saunders* v. *KDFBS, LLC*, 335 Conn. 586, 604, 239 A.3d 1162 (2020) ("[a] case is not ripe if it presents a hypothetical injury or a claim that is contingent on the happening of some event that has not yet and, indeed, may never transpire").

In the present case, the defendants requested that the commissioner issue an order stating, in relevant part, that they "have a credit for the 19.25 percent increase in permanent partial impairment to the heart and the additional 18 to 20 percent impairment opined by [the claimant's medical providers] against any temporary total disability benefits that may be due after the May 10, 2016 date of maximum medical improvement." The commissioner granted in part and denied in part the defendants' request. In the commissioner's March 23, 2021 amended findings and award, she added a conclusion to provide for "[f]urther hearings . . . with regard to the applicable statutory cap *in addition to credit for any advances made to date* . . . ." (Emphasis added.)

On appeal to the board, the defendants claimed that the commissioner "erred in failing to determine that [they] are entitled to a credit against the permanent partial disability award for any indemnity benefits paid after maximum medical improvement was reached." The board determined that the defendants' claim was not ripe for review, explaining that "the [commissioner] scheduled further hearings to address the issue of credits due to the [defendants] and therefore we do not believe that issue is ripe for appellate adjudication."

In the parties' briefs to this court, they do not address the board's concerns of ripeness related to the fact that

the commissioner had not yet conclusively ruled on the issue and decided, instead, to hold further hearings to address the defendants' request. In the parties' original briefs to this court, the defendants acknowledged that their credit argument "was not addressed," but nevertheless broadly stated, with no further analysis or explanation, that "[t]he claim for the credit is active and is an issue at this time." The plaintiff responded: "It appears that this issue is not yet ripe for adjudication. It would become ripe if, and only if, after the claimant's demise, those eligible to claim posthumous permanency benefits actually make such a claim . . . . Only at such time would an inquiry into the extant permanency, total disability paid, and an examination of relevant case law be appropriate—and then *at the trial level*." (Emphasis altered.)

In the defendants' supplemental brief to this court, they stated: "As the [claimant] has passed away, this issue is currently ripe for adjudication as there is the potential that the [claimant's] children may attempt to seek entitlement and payment of the 19.25 percent permanent partial impairment increase award pursuant to § 31-308 (d)."[27] The plaintiff's supplemental brief does not address the issue of ripeness.

During oral argument before this court on remand, the defendants' counsel acknowledged the unusual procedural posture of this case, insofar as a decision has not yet been made by the commissioner regarding the issue of whether they are entitled to a credit, and, therefore, that issue also had not been reviewed by the board. Nevertheless, the parties argued that this court may still review the defendants' claim because the issue of whether the defendants are entitled to a credit presents a question

---

[27] General Statutes § 31-308 (d) provides: "Any award or agreement for compensation made pursuant to this section shall be paid to the employee, or in the event of the employee's death, whether or not a formal award has been made prior to the death, to his surviving spouse or, if he has no surviving spouse, to his dependents in equal shares or, if he has no surviving spouse or dependents, to his children, in equal shares, regardless of their age."

of law that requires no further factual development. We are not persuaded.

There are significant factual gaps in the record that highlight how important it is for the parties to fully litigate this issue before the commissioner prior to any review by the board or this court. See *In re Aisjaha N.*, 343 Conn. 709, 721, 275 A.3d 1181 (2022) ("[O]ur role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claims] would be entirely speculative." (Internal quotation marks omitted.)). For instance, in the present case, the record does not clearly reflect what payments have been made to the claimant for either the temporary total disability benefits or the permanent partial disability benefits. Although the defendants focus on the "potential that the [claimant's] children may attempt to seek entitlement and payment of the 19.25 percent permanent partial impairment increase award pursuant to § 31-308 (d)," the commissioner's findings in the March 11, 2021 decision and the March 23, 2021 amended decision indicate that that award had been paid to the claimant.[28] Accordingly, the record also is unclear as to what remaining or outstanding permanent partial disability benefits, if any, may be sought posthumously by the claimant's children, or any other potential recipients, in accordance with § 31-308 (d).[29]

---

[28] The commissioner found that, "[p]ursuant to a stipulated finding and award approved on September 7, 2018, the claimant *was paid* an increased 19.25 percent permanent partial impairment to the heart, for a then total impairment of 63 percent, utilizing a May 10, 2016 date of maximum medical improvement." (Emphasis added.) As noted previously, the return of record in this case does not include the September 7, 2018 stipulated finding and award. See footnote 9 of this opinion. The possibility that the claimant had been paid that award may explain why the defendants' claim was phrased in a slightly different manner before the commissioner—insofar as they were seeking a credit against the unpaid temporary total benefits rather than a credit against the unpaid permanent partial benefits—and why the board summarized the defendants' claim as asserting that the commissioner erred by failing to credit "prior permanent partial disability payments."

[29] Notably, although the parties' supplemental briefs to this court focus on the 19.25 percent increased permanent partial impairment

Moreover, none of the cases cited by the parties establishes that the credit issue can be resolved as a matter of law based on the undisputed facts that are in the record before us. See *McCurdy* v. *State*, 227 Conn. 261, 269 and n.9, 630 A.2d 64 (1993); *Cappellino* v. *Cheshire*, 226 Conn. 569, 577–78, 628 A.2d 595 (1993); *Churchville* v. *Bruce R. Daly Mechanical Contractor*, No. 5365, CRB 8-08-8 (August 4, 2009), aff'd, 299 Conn. 185, 8 A.3d 507 (2010); *Estate of Syzmaszek* v. *Meriden*, supra, No. 5346, CRB 6-08-5; *Hall* v. *Gilbert & Bennett Mfg. Co.*, No. 1449, CRB 7-92-7 (April 7, 1994); see also *Esposito* v. *Stamford*, supra, 350 Conn. 215 n.7; 19 R. Carter et al., supra, §8:92, pp. 376–82.

Accordingly, it would be premature at this time to address the question of whether the defendants are entitled to a credit against the increased permanent partial impairment award for any temporary total disability benefits paid after the May 10, 2016 date of maximum medical improvement. We conclude that the board properly determined that the defendants' claim is not ripe for review.

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

award—which may or may not already have been paid to the claimant— the defendants' original brief to this court points out that the claimant also sought an additional 18 to 20 percent increase in his permanent partial impairment award. That is why, in their motion to correct the finding and award, the defendants requested "a credit for the 19.25 percent increase in permanent partial impairment to the heart *and the additional 18 to 20 percent impairment opined by* [*the claimant's medical providers*] against any temporary total disability benefits that may be due after the May 10, 2016 date of maximum medical improvement." (Emphasis added.)

Although the transcript from the September 1, 2020 formal hearing reflects that the claimant was not seeking to resolve the permanency benefit issue at that time, he nevertheless submitted evidence in support of such a claim, including evaluations, reports, and deposition testimony from medical providers. Accordingly, although we express no opinion as to the merits of such a claim, it is unclear whether the claimant's children, or any other potential recipients, will seek a posthumous award of those permanency benefits.